Bradford H. Bullock, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued December 8, 1978, before Judges ROGERS, DiSALLE and CRAIG, sitting as a panel of three.

*John O'Rourke*, with him *John C. Bonner*, and *Mc-
Tighe, Mullaney, Weiss, Bonner, Stewart & O'Neill*,
for petitioner.

*Daniel R. Schuckers*, Assistant Attorney General,
with him *Gerald Gornish*, Acting Attorney General, for
respondent.

OPINION BY JUDGE CRAIG, June 25, 1979:

This appeal, from an order of the Unemployment
Compensation Board of Review holding petitioner-
claimant ineligible for unemployment compensation
benefits due to a discharge for willful misconduct,[1]
raises the recurring issue of whether the intentional
violation of an employer's direct order or policy is
willful misconduct under *Frumento v. Unemployment
Compensation Board of Review*, 466 Pa. 81, 351 A.2d
631 (1976) and its progeny.

*Frumento* held that the employee's reason for non-
compliance with an employer's rule must be balanced
against the reasonableness of the rule; therefore, it is
not willful misconduct if the employee refuses to com-
ply with a rule which is unreasonable as applied to him
under circumstances in a given case.

In *Holomshek v. Unemployment Compensation
Board of Review*, Judge WILKINSON clarified the ap-
plication of that standard to a given set of facts:

> [T]he burden is on the employer to show willful
> misconduct. . . . [I]n violation of rules cases,
> this means that the burden is on the employer to

---

[1] Under Section 402(e) of the Unemployment Compensation Law,
Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, 43 P.S.
§802(e).

prove the rule and the fact of its violation. However, if the employee comes forward under the doctrine of Frumento, supra, and attempts to justify the violation, the employee then has the burden of establishing good cause.

39 Pa. Commonwealth Ct. 503, 505, 395 A.2d 708, 709 (1979).

Claimant here was employed by Diamond International Corporation as a district manager for the sale of egg cartons. To carry out his duties, he was entitled to the use of a company-owned car. Under company procedures he periodically arranged for the company to purchase a new car for him by personally soliciting bids from auto dealerships, including trade-in allowance for the car he was currently using. The company would then accept one of the bids submitted. The employer here had a policy which specifically limited the accessories allowed on a company car. In particular, the policy prohibited the purchase of air conditioning, even at personal expense, for any car to be used north of Washington, D.C.

The Board's relevant findings of fact are brief:

2. Claimant was discharged for violating company policy regarding his purchase of a company vehicle on May 26, 1976, i.e., of purchasing various accessories at personal expense and contrary to company policy.

3. After submitting a bid on a new automobile, which listed equipment, and which the company accepted, an invoice was forwarded to the employer by the dealer showing that the claimant purchased accessories not listed on the bid originally submitted and accepted; the claimant personally paid for these accessories.

4. Claimant was orally advised by the area sales manager on April 2, 1976 to comply with written corporate policy which specifically pro-

hibited the purchase of various accessories at personal expense.

Under *Holomshek, supra,* these findings adequately support a conclusion that the employer met its burden of proving that the rule against accessories at personal expense existed, that claimant was aware of the rule, and that claimant deliberately violated that rule.

The Board, in its discussion of the case, further concluded that the policy involved was "reasonable and necessary for the employer's business."

Claimant now contends that, because prior management had always approved such accessories in claimant's previous cars, the employer waived its prerogative to demand strict compliance in this instance.

Applying *Holomshek, supra,* this contention amounts to an argument that claimant demonstrated good cause for violating the rule.

Although the Board did not expressly conclude whether or not claimant demonstrated good cause for violating the rule, it did resolve conflicting testimony to find that he was advised on April 2, 1976 to begin complying with this rule.[2]

---

[2] Claimant never denied that he was not aware of the policy, nor denied that he was advised to forego air conditioning in his new car. He himself admitted that, during the conversation of April 2, 1976, his area sales manager told him that he could not predict how new management would react to another car with these accessories. He testified further, however, that the compliance decision remained with him and that he understood that he could again fail to comply with the rule, provided that this time he personally pay for the accessories and be prepared to prove that.

The employer's witness presented a somewhat different version of the conversation:

Q. And what do you claim was the violation at this time since he had previously had this equipment?

A. The violation was that the, at that time there was no violation because it met with the approval of the existing management and Mr. Murphy, specifically Mr. Murphy, who was instrumental in hiring Mr. Bullock at the time.

Because it is undisputed that he knew of the change in management and that he was advised that new management might begin strictly enforcing that rule, we cannot say that it was unreasonable to expect him to begin complying with the rule, even though violations had been overlooked in the past. Moreover, claimant presented no evidence to indicate that he attempted to get any further clarification of new management's intent. Instead, he simply purchased a new car with the forbidden accessories. Had management, without prior warning, simply begun enforcing a rule on claimant which it had always ignored in the past, the result could be different.

Consequently, because there is no question as to the finding that claimant received oral warning of the change, we need not remand for an express finding on whether he demonstrated good cause for the violation by relying on his past experience. Accepting as true all of his justifications, we cannot say that he has met his burden to show that the rule was unreasonable as applied to him in the circumstances. *See Wilkerson v. Unemployment Compensation Board of Review*, 41 Pa. Commonwealth Ct. 624, 399 A.2d 1188 (1979).

The order of the Board is affirmed.

---

Q. Yeah?

A. Mr. Murphy has since left. And as a result, knwoing [sic] the infractions that took place with Mr. Bullock he was warned verbally for over a half hour on specifically April 2nd in his hometown by me that similar actions on his part when Mr. Murphy was in management would no longer be tolerated.

Q. Now you claim that he had previously been informed of this?

A. He was informed on April 2nd in front of the Holiday Inn in Cornwells Heights, PA, by me and he vehemently protested the fact that he would have to suffer without air conditioning on a new auto.

ORDER

AND Now, this 25th day of June, 1979, the order of the Unemployment Compensation Board of Review, dated March 17, 1978, in No. B-142236 denying benefits, is affirmed.