633 A.2d 1150

Barry C. GILLINS, Appellant,

v.

COMMONWEALTH of Pennsylvania, UNEMPLOYMENT
COMPENSATION BOARD OF REVIEW, Appellee.

PENNSYLVANIA POWER COMPANY, Appellee,

v.

COMMONWEALTH of Pennsylvania, UNEMPLOYMENT
COMPENSATION BOARD OF REVIEW, Appellant.

Supreme Court of Pennsylvania.

Submitted April 9, 1992.

Decided Nov. 12, 1993.

Lorrie McKinley, Philadelphia, for Barry C. Gillins.

Clifford F. Blaze, David J. Gromelski, Sandra S. Christianson, Lisa Jo Fanelli, Harrisburg, Com., Unemployment Compensation Bd. of Review.

Harry A. Flannery, New Castle, for Pennsylvania Power Co.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY and MONTEMURO, JJ.

## OPINION

NIX, Chief Justice.

The claimants, Barry C. Gillins and Richard O. Gibbs, in these appeals were denied benefits under section 3 of the Unemployment Compensation Law, Act of Dec. 5, 1936, P.L. 2897, art. I, § 3, *as amended,* 43 P.S. § 752 ("section 3"), and subsection 402(e) of that law, Act of Dec. 5, 1936, P.L. 2897, art. IV, § 402(e), *as amended,* 43 P.S. § 802(e) ("subsection 402(e)"), respectively. The discharge or suspension was based solely on off-duty arrests. We consolidated these appeals to determine whether a claimant is ineligible for unemployment compensation benefits ("benefits") pursuant to section 3 or subsection 402(e) of the Unemployment Compensation Law where discharge is based solely on the fact of an off-duty arrest, without proof of the underlying charges. For the reasons that follow, we hold that a claimant is not ineligible for benefits where discharge is based solely on the fact of an off-duty arrest, without proof of the underlying charges.

## No. 95 E.D. Appeal Docket 1991

Barry C. Gillins ("Gillins"), a clerk for the U.S. Postal Service Data Center ("Postal Service"), was arrested and charged with murder and possession of an instrument of crime while away from the work place. Gillins was placed on administrative leave and subsequently suspended. Gillins filed for benefits for the weeks he was suspended. The Office of Employment Security denied his application for benefits.

At the hearing before the referee, the Postal Service presented three of its employees as witnesses along with a copy of its Code of Ethics, an employee manual, and the relevant collective bargaining provisions governing suspension when an employee is charged with a crime. It is conceded that the first two employer witnesses admitted that they neither observed nor had any other direct knowledge of Gillins' arrest. The last employer witness testified that he verified Gillins' arrest and submitted a copy of a police homicide report that was objected to as hearsay. The referee made the following pertinent Findings of Fact:

2. The employer has a standards of conduct policy of which the claimant was aware that prohibited employees from creating appearances which would adversely affect public confidence and integrity of the postal service, or prohibited the engagement of employees in any criminal, notorious or disgraceful conduct while employed.

3. Any employee having found violating [sic] the said policy would be subject to an indefinite suspension where the employer has reasonable cause to believe that an employee is guilty of a crime situation for which a sentence of imprisonment could be imposed.

. . . .

5. The employer, after having investigated and confirmed the said incident, suspended the claimant indefinite in compliance with company policy.

6. The claimant's conduct was contrary to employer's policy.

Referee's Decision, No. UCFE–88–1–D–591 at 1 (Oct. 3, 1988). Based on the foregoing Findings of Fact, the referee denied benefits, concluding that Gillins' conduct was contrary to the Postal Service's standards of conduct and, as such, Gillins was considered ineligible for benefits pursuant to section 3 of the Unemployment Compensation Law. The Unemployment Compensation Board of Review ("Board") affirmed.

The Commonwealth Court affirmed the denial of benefits based upon the conclusion that the employer had sufficient information to provide it with reasonable cause to believe that Gillins committed a crime. The Court concluded that the "investigation and examination of the police report [by a postal investigator] gave the *Postal Service itself* reasonable cause to believe Gillins engaged in the criminal conduct for which he was charged and amounts to more than mere evidence of arrest." *Gillins v. Unemployment Compensation Bd. of Review,* No. 1738 C.D.1989, slip op. at 2 (Commw.Ct. July 30, 1990). Thus, because suspension was permitted under such circumstances by the Postal Service's collective bargaining agreement and Code of Ethics, the Commonwealth Court reasoned that the denial of benefits was appropriate. *Id.*

In dissent, Judge Pellegrini concluded that benefits were improperly denied. He found that the Postal Service "made no attempt at the unemployment compensation hearing to present any conduct which resulted in [Gillins'] arrest, nor that his arrest directly impacted on his ability to perform his assigned duties...." *Id.,* dissenting slip op. at 1. He stated that such a standard is mandated by *Unemployment Compensation Bd. of Review v. Derk,* 24 Pa.Commw. 54, 57, 353 A.2d 915, 917 (1976). Thus, Judge Pellegrini would have held that the "testimony is simply insufficient under *Derk* to establish misconduct to deny unemployment compensation benefits." *Gillins,* No. 1738 C.D. 1989, dissenting slip op. at 2.

Gillins appealed the Commonwealth Court Order to this Court. This Court granted allocatur.

### No. 57 W.D. Appeal Docket 1991

Richard O. Gibbs ("Gibbs") was employed as an instrument and test repairman by the Pennsylvania Power Company

("Pennsylvania Power") until his discharge. While off duty, Gibbs was arrested by the police and charged with possession with intent to deliver cocaine, possession of a controlled substance and criminal conspiracy as a result of cocaine being found in the possession of a woman who was accompanying Gibbs at that time. Gibbs was suspended and eventually discharged for violating Pennsylvania Power's drug policy, of which he was aware. The drug policy states in pertinent part:

> Off-the-job illegal drug use which could adversely affect job performance, or jeopardize the safety of other employees, the public, or Company equipment, is proper cause for disciplinary action, up to and including termination of employment. Employees arrested in off-the-job drug activity shall be in violation of this policy.

Record at 16a.

Gibbs applied for benefits, which the Office of Employment Security denied. He appealed the decision to a referee who affirmed, finding that Gibbs' arrest as a result of his off-the-job drug activity was in violation of a work rule known to him. Gibbs then appealed to the Board which reversed the referee and held that Pennsylvania Power failed to prove that Gibbs was involved in drug activity and, moreover, that Gibbs' mere arrest was insufficient to establish willful misconduct pursuant to subsection 402(e) of the Unemployment Compensation Law, 43 P.S. § 802(e). Subsequently, the Board denied Pennsylvania Power's Petition for Reconsideration. The Commonwealth Court reversed having determined that Gibbs willfully violated the Pennsylvania Power's explicit work rule. *Pennsylvania Power Co. v. Unemployment Compensation Bd. of Review,* 135 Pa.Commw. 157, 579 A.2d 1030 (1990). Gibbs appealed to this Court, and we granted allocatur. 527 Pa. 657, 593 A.2d 427 (1991).

The two appeals were consolidated to determine whether section 3 of the Unemployment Compensation Law or subsection 402(e) of the Unemployment Compensation Law may be the basis for finding a claimant ineligible for unemployment compensation benefits where discharge is based solely on the

fact of an off-duty arrest, without proof of the underlying charges.

■ The scope of review in an appeal from an adjudication of a Commonwealth agency is that we must affirm unless the adjudication violates the constitutional rights of the Appellant, or is contrary to law, or that the agency procedure was violated, or a finding of fact necessary for the decision is not supported by substantial evidence. *Miceli v. Unemployment Compensation Bd. of Review,* 519 Pa. 515, 519, 549 A.2d 113, 115 (1988). *See also, Estate of McGovern v. State Employees' Retirement Bd.,* 512 Pa. 377, 383, 517 A.2d 523, 525 (1986).

Gibbs and Gillins have neither argued that their constitutional rights were violated, nor that the agency procedure was violated. Thus, we must limit our review to whether the Commonwealth Court order is contrary to law and whether a finding of fact necessary to support the decision was not supported by substantial evidence.

Instantly, in the first appeal, Gillins was denied benefits pursuant to section 3 of the Unemployment Compensation Law, 43 P.S. § 752, which governs, *inter alia,* conduct occurring away from the workplace. Section 3 declares the policy of the Unemployment Compensation Law.

Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of the Commonwealth. Involuntary unemployment and its resulting burden of indigency falls with crushing force upon the unemployed worker, and ultimately upon the Commonwealth and its political subdivisions in the form of poor relief assistance. Security against unemployment and the spread of indigency can best be provided by the systematic setting aside of financial reserves to be used as compensation for loss of wages by employes during periods *when they become unemployed through no fault of their own.* The principle of the accumulation of financial reserves, the sharing of risks, and the payment of compensation with respect to unemployment meets the need of protection against the hazards of unemployment and indigency. The Legislature, therefore,

declares that in its considered judgment the public good and the general welfare of the citizens of this Commonwealth require the exercise of the police powers of the Commonwealth in the enactment of this act for the compulsory setting aside of unemployment reserves to be used for the benefit of *persons unemployed through no fault of their own.*

43 P.S. § 752 (emphasis added).

■ The Commonwealth Court has enunciated a two-part test to determine whether a claimant is ineligible for benefits pursuant to section 3 that today we adopt. That test was first announced in *Unemployment Compensation Bd. of Review v. Derk,* 24 Pa.Commw. 54, 353 A.2d 915 (1976).

> In order to deny compensation under Section 3 of the [Unemployment Compensation Law], more is needed than mere evidence of an *arrest* for a crime. The employer must present some evidence showing conduct of the claimant leading to the criminal arrest which is inconsistent with acceptable standards of behavior and which *directly* reflects upon his ability to perform his assigned duties. Of course, no proof of criminal conviction is necessary. The employer need only produce evidence that would have established fault on the part of the employee which would be incompatible with his work responsibilities.

*Id.* at 57, 353 A.2d at 917 (citation omitted) (footnote omitted). Thus, the employer has the burden of proving: (1) that the conduct of the claimant leading to the criminal arrest was inconsistent with acceptable standards of behavior, and (2) that the claimant's conduct directly reflects upon his ability to perform his assigned duties. Moreover, both prongs of the test must be satisfied for the employer to meet its burden of proof that a claimant is unemployed through fault of his own. *Mills v. Unemployment Compensation Bd. of Review,* 115 Pa.Commw. 277, 279, 539 A.2d 956, 957 (1988).

■ Clearly, the Postal Service did not provide the requisite evidence to meet its burden of proof that claimant is *unemployed through fault of his own.* The Board concedes

that no admissible testimony was presented as to any illegal conduct alleged to have been committed by Gillins. As Judge Pellegrini concluded in his dissent, the Postal Service's sole reliance on the police report and then recounting what was in the police report at an unemployment compensation hearing is not sufficient evidence showing conduct of the claimant leading to the criminal arrest which is inconsistent with acceptable standards of behavior.[1] While it is undisputed that Gillins was arrested, the Postal Service did not present any evidence showing that Gillins was at fault for the alleged crime. Therefore, the Postal Service did not present sufficient evidence to satisfy the *Derk* test and, thus, did not show that Gibbs was unemployed through fault of his own.

In affirming the denial of benefits under section 3, based only on the evidence of an off-duty arrest, the Commonwealth Court allowed an employer's policy to dictate whether Gillins was ineligible for benefits. The Commonwealth Court determined that the Postal Service, based on its investigation and examination of the police report, had *reasonable cause* to believe that *Gillins had engaged in criminal conduct*.[2] The Commonwealth Court apparently relied on the Postal Service policy to determine eligibility for benefits. However, this Court has stated that "the issue is not whether the employer had the right to discharge for the questioned conduct of the employee, but rather whether the [Commonwealth] is justified in reinforcing that decision by denying benefits under [the Unemployment Compensation Law] for the complained of conduct." *Frumento v. Unemployment Compensation Bd. of Review*, 466 Pa. 81, 86, 351 A.2d 631, 634 (1976) (footnotes

1. At the unemployment compensation hearing in this case, a proper objection, based upon hearsay evidence, was made to the police report. Accordingly, it is not competent evidence to support a finding of fact. *See Auddino v. Unemployment Compensation Bd. of Review*, 96 Pa. Commw. 333, 507 A.2d 913 (1986).

2. Any employee having found violating [sic] [a standards of conduct policy] would be subject to an indefinite suspension where the employer *has reasonable cause to believe that an employee is guilty of a crime situation for which a sentence of imprisonment could be imposed.* Referee's Decision, No. UCFE–88–1–D–591 at 1 (Oct. 3, 1988) (emphasis added).

omitted). Thus, the Commonwealth must determine whether a claimant is ineligible for benefits pursuant to the policies set forth in the Unemployment Compensation Law and pursuant to this Court's interpretation of that law. Although an employer may lawfully discharge or suspend an employee for a policy violation, this Court will not allow an employer policy to command whether an employee is ineligible for benefits.

Regarding Gillins' claim for benefits, the Commonwealth Court improperly allowed an employer policy to govern the determination of benefits rather than requiring the employer to satisfy its burden of proof pursuant to *Derk*. Thus, the Commonwealth Court committed an error of law when it affirmed the denial of benefits to Gillins where suspension was based solely on an off-duty arrest.

In the second appeal, the claimant Gibbs was denied unemployment compensation benefits pursuant to subsection 402(e) of the Unemployment Compensation Law, 43 P.S. § 802(e), for violating a work rule. Subsection 402(e) provides in pertinent part:

An employe shall be ineligible for compensation for any week—

. . . .

(e) In which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work. . . .

43 P.S. § 802(e).

The Board argues that the Commonwealth Court erred as a matter of law in holding that Gibbs was ineligible for benefits pursuant to subsection 402(e). The Board submits that no disqualifying willful misconduct on the part of Gibbs was shown and that none can be inferred from the fact that he was arrested. The Board states that there was no evidence of any wrongdoing by Gibbs in the record. Moreover, the Board avers that, by failing to focus on the issue of whether Pennsylvania Power met its burden of proving willful misconduct, the Commonwealth Court elevated Pennsylvania Power's work rule to a rule of law binding on the Commonwealth.

Appellee Pennsylvania Power argues to the contrary that, where an employer rule exists, the employer need only prove the existence of the rule and the violation of the rule in order for a discharge to result in ineligibility for benefits. It submits that in order for an employer to discharge an employee and to prevent eligibility for benefits, the employer must do so in accordance with its own rules. Once the rule is established and is violated, the burden shifts to the claimant to rebut the presumption of willful misconduct either by showing good cause for the violation or that the work rule is unreasonable. Pennsylvania Power avers that, because Gibbs failed to show either, benefits were properly denied.

It must be remembered that what is "[p]aramount in our analysis [of this section] is the realization that [the Unemployment Compensation Law] was intended to be remedial and, thus, should be liberally construed to achieve its express purposes." *Frumento v. Unemployment Compensation Bd. of Review*, 466 Pa. 81, 85, 351 A.2d 631, 633 (1976). With this in mind, we begin with the definition of willful misconduct.

"Willful misconduct" . . . has been held to comprehend an act of wanton or willful disregard of the employer's interest, *a deliberate violation of the employer's rules*, a disregard of standards of behavior which the employer has a right to expect of an employee, or negligence indicating an intentional disregard of the employer's interest or of the employe's duties and obligations to the employer.

*Id.* at 83–4, 351 A.2d at 632 (quoting *Moyer Unemployment Compensation Case*, 177 Pa.Super. 72, 74, 110 A.2d 753, 754 (1955)) (emphasis added).

In a subsection 402(e) case, which governs conduct connected with work, the employer bears the burden of proving willful misconduct. *Orloski v. Unemployment Compensation Bd. of Review*, 38 Pa.Commw. 174, 176, 392 A.2d 333, 334 (1978). However, in this case, Pennsylvania Power has not met this burden. Although Gibbs was arrested, Pennsylvania Power failed to present evidence sufficient to prove that Gibbs was actually involved in "drug activity." The Board found that Gibbs was not in possession of cocaine, did not give the

cocaine to the woman, was not selling cocaine, and did not engage in any type of drug activity. U.C.B.R. Decision and Order, No. B–90–99–A–92 at 2 (Apr. 4, 1990). Evidence of the arrest alone is insufficient to show a deliberate violation of the employer's rule prohibiting arrests for off-the-job drug activity. As the Board correctly determined, Gibbs' mere arrest and subsequent charges of drug-related crimes were insufficient to establish willful misconduct as a matter of law.

Moreover, we reject Pennsylvania Power's contention that, in this case, Pennsylvania Power need only prove the existence of the rule and the violation of the rule in order for a discharge to result in ineligibility of benefits. Pennsylvania Power's argument extends from cases where the issue was whether the *intentional* or *deliberate violation* of an employer's direct order or policy constitutes willful misconduct. *See, e.g., Bullock v. Unemployment Compensation Bd. of Review,* 43 Pa.Commw. 528, 402 A.2d 734 (1979); *Holomshek v. Unemployment Compensation Bd. of Review,* 39 Pa.Commw. 503, 395 A.2d 708 (1979). In those cases, there was no question that an intentional or deliberate violation of an employer rule regarding work related conduct had occurred. In this case, however, whether there was an intentional or deliberate violation of an employer rule regarding work related conduct is at issue. The question is whether evidence of an off-duty arrest alone is sufficient to qualify as a deliberate violation of an employer's rule, an act of wanton or willful disregard of the employer's interest, a disregard of the standards of behavior which the employer has a right to expect of the employee, or negligence indicating an intentional disregard of the employer's interest or of the employee's duties and obligations to the employer, *i.e.,* willful misconduct. Thus, where Pennsylvania Power failed to overcome its initial burden of proving that Gibbs' off-duty conduct constituted willful misconduct under subsection 402(e), proof of the rule's existence and violation was insufficient to result in ineligibility for benefits in this case.[3]

3. We need not address Pennsylvania Power's claim that Gibbs failed to show that he had good cause for the violation of employer's rule or that

Additionally, as stated above, section 3 of the Unemployment Compensation Law, 43 P.S. § 752, which must be considered when construing all other sections of the Unemployment Compensation Law,[4] declares the policy behind the law—providing security against unemployment and the spread of indigency for employees who "become unemployed through no fault of their own." 43 P.S. § 752. Section 3 is arguably applicable in this second appeal because it is a basis for denying benefits, independent of the grounds set forth in subsection 402(e), when an individual is unemployed through his or her own fault due to conduct *not connected with work.* *Southeastern Pennsylvania Trans. Authority v. Unemployment Compensation Bd. of Review,* 96 Pa.Commw. 38, 42, 506 A.2d 974, 976–77 (1986). Gibbs was discharged for a violation of Pennsylvania Power's rule prohibiting arrests for off-the-job drug activity, which arguably qualified as conduct not connected with work. As previously stated, mere evidence of an off-the-job arrest in a section 3 case is insufficient to find that a claimant is ineligible for benefits.[5]

In this matter, this Court cannot allow Pennsylvania Power's rule which provides for discharge following an arrest for off-the-job drug activity, without anything more, to contravene the stated policy of the Unemployment Compensation Law. Again, "the issue is not whether the employer had the right to discharge for the questioned conduct of the employee, but rather whether the [Commonwealth] is justified in reinforcing that decision by denying benefits under [the Unemployment

the work rule is unreasonable. Again, this analysis is only an issue when an employer shows that the *off-the-job* conduct was a *deliberate* violation of an employer's rule, thus constituting willful misconduct. Instantly, the Board properly concluded that Pennsylvania Power had not carried its burden of proving willful misconduct.

4. *See Dep't. of Labor and Indus., Bureau of Employment Security v. Unemployment Compensation Bd. of Review,* 418 Pa. 471, 211 A.2d 463 (1965).

5. We refrain from determining whether this second appeal is governed by section 3 or subsection 402(e) of the Unemployment Compensation Law. Indeed, the answer to this question is debatable. However, the parties do not raise the issue. Moreover, under either section 3 or subsection 402(e) evidence of an off-duty arrest alone is insufficient to find claimant ineligible for benefits.

Compensation Law] for the complained of conduct." *Frumento*, 466 Pa. at 86, 351 A.2d at 634 (footnotes omitted). Gibbs' violation of Pennsylvania Power's rule prohibiting arrest for off-the-job drug activity, without more, cannot dictate whether Gibbs is ineligible for benefits. It must be remembered that section 3 is "the keystone upon which the entire [Unemployment Compensation Law] rests and the basis upon which the individual sections of the [law] must be interpreted and construed." *Dep't. of Labor and Indus., Bureau of Employment Security v. Unemployment Compensation Bd. of Review*, 418 Pa. 471, 476, 211 A.2d 463, 466 (1965) (citations omitted).

With regard to Gibbs' claim for benefits, the Commonwealth Court improperly allowed an employer policy to govern the determination of benefits rather than requiring the employer to satisfy its burden of proof in a willful misconduct case pursuant to subsection 402(e). Moreover, the employer did not satisfy its burden pursuant to section 3 either. Thus, the Commonwealth Court committed an error of law when it denied benefits to Gibbs where his discharge was based solely on an off-duty arrest.[6]

In this matter, we hold that a claimant is not ineligible for benefits pursuant to section 3 or subsection 402(e) of the Unemployment Compensation Law where discharge is based solely on the fact of an off-duty arrest, without proof of the underlying charges.

Accordingly, the Commonwealth Court Order in No. 95 Eastern District Appeal Docket 1991 is reversed, and the Commonwealth Court Order in No. 57 Western District Appeal Docket 1991 is reversed and remanded to that Court to resolve the issue regarding the Petition for Reconsideration.

PAPADAKOS, J., files a dissenting opinion.

6. Pennsylvania Power also contends that the case should be remanded to the Commonwealth Court to respond to Pennsylvania Power's contention that the Board erred in failing to grant reconsideration. This issue was raised before the Commonwealth Court; however, that Court did not address the issue because they disposed of the case on the first issue. Thus, we agree with Pennsylvania Power and remand to the Commonwealth Court for a resolution of the issue regarding the Board's denial of the petition for reconsideration.

PAPADAKOS, Justice, dissenting.

I dissent and adopt the well-reasoned opinion of the Commonwealth Court.