IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tyrone Hall,              :
              Petitioner    :
                               :
        v.                      :
                               :
Unemployment Compensation Board   :
of Review,                     :   No. 709 C.D. 2015
            Respondent :   Submitted: February 19, 2016


BEFORE:    HONORABLE ROBERT SIMPSON, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI           FILED: March 9, 2016


       Tyrone Hall (Claimant) petitions pro se for review of an order of the Unemployment Compensation Board of Review (Board) finding him ineligible for unemployment compensation benefits under Section 402(e) of the Unemployment Compensation Law (Law)[1] because his termination was due to willful misconduct. For the reasons that follow, we affirm.

---

[1] Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§751–914. Section 402(e) provides, in pertinent part:

       An employe shall be ineligible for compensation for any week—

                             * * *

**(Footnote continued on next page…)**

**I.**

The following facts are not in dispute. Claimant was employed as a Junior Asset Management Specialist for IntellecTechs (Employer) from April 21, 2014, through June 6, 2014. In August 2014, he filed a claim stating that he was forced to quit his job for medical reasons as his physician ordered him to refrain from working due to a medical problem he suffered while at military reserves training. In a follow-up call placed by the Unemployment Compensation Service Center (Service Center), Claimant explained, "[I] am under doctors' [sic] orders to not work at all[.]" (Certified Record [C.R.], Record of Oral Interview (8/15/14)).

The Service Center determined that Claimant satisfied his burden of proving that he voluntarily quit his job for health reasons and that he informed Employer of his health limitations, thereby demonstrating that he was not ineligible for benefits under Section 402(b) of the Law.[2] However, because

---

**(continued…)**

> (e) In which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work, irrespective of whether or not such work is "employment" as defined in this act…

43 P.S. §802(e).

[2] Section 402(b) renders an employee ineligible for compensation for any week:

> In which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature, irrespective of whether or not such work is in "employment" as defined in this act: Provided, That a voluntary leaving work because of a disability if the employer is able to provide other suitable work

**(Footnote continued on next page…)**

Claimant's work restrictions were so great that he was unable to accept any type of work offered by Employer, the Service Center found him ineligible for benefits pursuant to Section 401(d)(1) of the Law.[3]

Employer appealed the Service Center's determination under Section 402(b) of the Law to the Board, asserting that Claimant did not voluntarily quit his job for health reasons, but rather, was terminated on June 7, 2014, for falsifying timesheets resulting in the theft of company funds. In support of its appeal, Employer stated that Claimant did not work May 27–30, 2014, but nonetheless reported his paid time off as hours worked in Employer's time-management system in violation of Employer's "Timesheets, Payroll, and Pay Deductions" Policy and further failed to report the overpayment.

---

**(continued…)**

> shall be deemed not a cause of a necessitous and compelling nature….

43 P.S. §802(b).

[3] To be eligible to receive compensation benefits, an employee must:

> [be] able to work and available for suitable work: Provided, That no otherwise eligible claimant shall be denied benefits for any week because he is in training with the approval of the secretary nor shall such individual be denied benefits with respect to any week in which he is in training with the approval of the secretary by reason of the application of the provisions of this subsection relating to availability for work or the provisions of section 402(a) of this act relating to failure to apply for or a refusal to accept suitable work.

Section 401(d)(1) of the Law, 43 P.S. §801(d)(1).

At a telephonic hearing in September 2014, the Referee noted that she attempted to call Claimant twice but the call went directly to voicemail, and it appeared that Claimant turned his telephone off, despite the fact the hearing notice indicated that Claimant was to call the office. Employer's Chief Executive Officer, Jeri Prophet, testified that she terminated Claimant on June 7, 2014, via telephone call and by letter dated August 1, 2014, because "[h]e falsified time sheets resulting in overpayment and upon investigation it was done intentionally and he did not report the payroll error resulting in being paid company funds that [were] not due to him." (C.R., 9/19/14 Transcript of Testimony, at 3.)

CEO Prophet explained that Employer was a government contractor for which Claimant worked at an off-site location—a United States Marine Corp Base at Camp Lejeune. She stated that on June 11, 2014, the Camp Lejeune site manager notified her that Claimant had not reported to work since Monday, June 9, 2014, and advised that the government was terminating the contract position. After this exchange, CEO Prophet immediately contacted Claimant via text message to inquire about his whereabouts. She testified that Claimant did not respond until June 13, 2014, when he advised that he was away for military drill due to the fact that he is a reservist for the United States Military. CEO Prophet explained that Employer maintained a policy and procedure for requesting time off but that Claimant failed to follow it. According to CEO Prophet, Claimant advised via text message that he had informed the site manager of his whereabouts.

Regardless, when the government terminated the position on June 11, 2014, it requested Employer to submit a time audit pursuant to which Employer

4

provided a log of all of Claimant's time. While reviewing the logs, CEO Prophet testified that it came to her attention that Claimant had requested time off for May 27–30, 2014, but still represented that he worked those days on his timesheet. Employer also presented a screenshot of the "Timesheet Payroll" Form Claimant submitted, indicating that from May 16 to May 31, 2014, Claimant worked 80 hours with no paid time off.

CEO Prophet explained that in follow up, Claimant stated that he did, in fact, take off May 27–30, 2014, for a funeral. According to CEO Prophet, Claimant then admitted knowing that he claimed this time on his timesheet and understood that he had been overpaid. She summarized their conversation as follows:

> I asked him why he failed to report the overpayment and he indicated at that point that he didn't know. And I asked him, you know, do you understand the policies and procedures in the employee handbook that you are responsible for accurately recording your time, you signed the policy. He indicated to me that he did understand and that he did understand that he was not tracking his time according to our or the government's time keeping system. It was very clear to me upon discovery that there was another entire week of time that he had put into the time keeping system that he did not show up for work not one day that week and so upon those two discoveries without reporting the payroll error that he was terminated immediately for theft of company funds.

(*Id*. at 7.) In other words, CEO Prophet explained that upon investigation, she detected several instances where Claimant did not show up for work at Camp

5

Lejeune but indicated that he had worked on his timesheet, thereby hiding his absence from CEO Prophet who otherwise would not have known since she works in Virginia.

The Referee issued a decision crediting Employer's evidence and finding Claimant ineligible for benefits under Sections 402(b) and 401(d)(1) of the Law. Specifically, with regard to Section 402(b), the Referee determined that Employer's undisputed testimony satisfied its burden of showing that Claimant was terminated for willful misconduct because he admitted claiming time for which he had not worked, despite being aware of Employer's policies. Further, with respect to Section 401(d)(1), the Referee explained that although a claimant is presumed to be able and available for work when he files a claim, here, Claimant rebutted this presumption by informing the Service Center that he was not able and available for work.

Claimant appealed to the Board, explaining that he was unable to attend the hearing before the Referee and requested that it be rescheduled in advance. He further advised that the hearing was, in fact, rescheduled pursuant to a notice he received in the mail. The Board remanded the matter to the Referee for a hearing to determine whether Claimant had proper cause for his non-appearance at the prior hearing.

On remand,[4] the Referee conducted another hearing by telephone at which Claimant testified regarding his non-appearance at the first hearing.[5] Regarding the merits of the case, Claimant testified that in May 2014, he notified Employer as well as the governmental entity with which Employer had a contract that he required time off due to a family member's death. He stated that subsequently, Romeo Speeno, one of CEO Prophet's associates, contacted him about his timesheet. According to Claimant, he realized that he made a mistake inputting his time and disclosed the same to Mr. Speeno, who agreed to correct the error. Additionally, he stated that he informed CEO Prophet of the mistake. He stated that he received notice of his termination on June 7, 2014, at which time he was serving reserved military duty and that he interpreted that letter to terminate him because of his absence on that date. He testified that he discussed the issue with Employer, which planned to investigate but asked him to return his equipment in the meantime. Subsequently, he received a letter indicating that he was terminated due to his May timesheet. He stated that after receiving the letter, he contacted Employer and advised that the timesheet issue had already been resolved as per prior conversations.

---

[4] The Referee conducted another hearing by telephone and, again, Claimant neither called in nor answered his telephone. However, realizing that the hearing notice was not sent to the Philadelphia address to which Claimant recently moved, the Referee rescheduled the hearing. Likewise, Employer was apparently unaware of the hearing.

[5] Because the Board determined that Claimant's non-appearance at the initial hearing was excusable, and because that finding has not been challenged on appeal, we will not set forth at length Claimant's testimony regarding this issue.

On cross-examination, Claimant admitted that CEO Prophet provided his initial employee orientation but denied that she taught him how to input time, stating that Mr. Speeno assisted him in doing so in May 2014. He did acknowledge that during the orientation, CEO Prophet reviewed the timekeeping system with him, but explained that "I didn't have any of the equipment in front of me to you know understand it." (C.R., 11/24/14 Transcript of Testimony, at 18.) He agreed that he received the Employee Handbook and reviewed it but denied recalling its policy regarding incorrect entries of time.

Claimant stated that he knew he had claimed time for the days he took off for bereavement in May 2014 and, therefore, called Mr. Speeno in May to address the issue since he was unable to reach CEO Prophet. Thereafter, he assumed the issue was resolved. However, when questioned who handles payroll issues for Employer, Claimant stated that Human Resources does and admitted that Mr. Speeno is not part of Human Resources but stated that he is Claimant's first contact manager and a recruiter. Claimant explained that when he subsequently viewed his timesheet and realized the error had not been corrected, he left a voicemail for CEO Prophet on May 27 or 28, 2014, and thought he sent an email to her as well.

Regarding his termination, Claimant explained that initially, he was not given a reason as to why he was fired. Because he had been away from work on reserve duty orders, he presumed his absence to be the reason but provided those orders a month in advance and later learned his termination was due to his

8

May timesheet, which he thought was resolved. With respect to why it was proper for Claimant to contact Mr. Speeno about his timesheet error, he stated:

> He was doing that work. He was anything at the first—he said he was like my manager. He said anything [sic] call him up and he'll help me. He'll straighten out that. I said okay fine. So that was like my first line of defense for me right there to call him up and if anything go [sic] on that's the person I talk to but I couldn't get contact with Ms. Prophet that was my first line of defense. Him, he was like my manager. He told me if I had any problems give him a call.

(*Id.* at 23.) He recalled that his termination was provided via email and that he never spoke to CEO Prophet personally.

In rebuttal, CEO Prophet stated that Claimant was provided an Employee Handbook for which he signed, along with numerous emails indicating that CEO Prophet handles all payroll issues. She explained that Claimant was provided her cellphone number and yet, Claimant apparently reached out to Mr. Speeno, who is a recruiter and is no longer involved in the employment process once an employee is hired. She recalled that she spoke to Claimant numerous times about other issues and at no point did he mention his timesheet error. Further, according to her, Claimant never advised her that he had discussed this issue with Mr. Speeno. Regarding his absence while at drill, CEO Prophet stated that she requested he provide her with his orders numerous times and that he repeatedly failed to do so.

9

Claimant disputed that he failed to provide his orders, indicating that he emailed scanned copies of his orders to CEO Prophet and Mr. Speeno and verbally advised both of them as well. Claimant also submitted a note from William Chapman, M.D. dated September 9, 2014, indicating that Claimant was able to return to work with no restrictions as of the following day, September 10, 2014.

Following the hearing, the Board determined that Employer satisfied its burden of proving that Claimant was discharged for willful misconduct because based on Employer's policy, Claimant was or should have been aware of Employer's timekeeping and payroll practices and should have known that any problems with respect to these issues needed to be directed to CEO Prophet. Further, the Board credited CEO Prophet's testimony that Claimant both requested time off and requested payment for hours he did not work on May 27–30, 2014, and admitted to being aware of the overpayment despite the fact he did not report it. The Board rejected Claimant's testimony that he reported the issue to Mr. Speeno. As such, the Board concluded that "the [C]laimant's action of knowingly submitting inaccurate timesheets and failing to notify the [E]mployer of an overpayment falls below the standard that an employer has the right to expect from an employee and benefits must be denied under Section 402(e) of the Law." (3/11/15 Board Decision, at 3.) Claimant filed a motion for reconsideration, which the Board denied, and this appeal followed.

10

## II.

On appeal,[6] Claimant first contends that the Board erred in determining that he lacked a necessitous and compelling reason for quitting his job pursuant to Section 402(b) of the Law. However, the Board did not find Claimant ineligible for benefits because he quit under Section 402(b); rather, it found him ineligible under Section 402(e) on the basis that he was terminated for willful misconduct. Claimant acknowledges this fact in his brief, noting that he "was discharge[d] from his employment." (Brief of Petitioner, at 10.) Nonetheless, he suggests that we apply the law applicable to Section 402(b). Because Claimant has conflated these issues and because the Board made no finding of ineligibility pursuant to Section 402(b), we reject Claimant's argument.

Further, Claimant asserts that the Board's decision must be reversed because insofar as it relied on Section 402 of the Law, that provision does not exist. In support of this claim, he cites 43 P.S. §402 and notes that this provision was repealed by the Act of May 22, 1933. In this regard, Claimant has

___

[6] Our review is limited to determining whether the Board's findings of fact are supported by substantial evidence in the record, whether errors of law were committed, whether agency procedure was violated, or whether constitutional rights were violated. *Gillins v. Unemployment Compensation Board of Review*, 633 A.2d 1150, 1153 (Pa. 1993). We have defined "substantial evidence" as such "relevant evidence that a reasonable mind might consider adequate to support a conclusion." *Palladino v. Unemployment Compensation Board of Review*, 81 A.3d 1096, 1100 n.3 (Pa. Cmwlth. 2013).

After the instant appeal was initiated, the Board filed an application to dismiss, arguing that Claimant waived the only issue capable of review by failing to address it in his brief. We declined to dismiss the appeal at that time, but ordered that the application be considered with the merits of the petition. For the reasons discussed below, we deny the application but affirm the Board's ruling.

11

misconstrued the Board's decision. Although the Board relied on Section 402 of the Law, that provision is codified at 43 P.S. §802, not 43 P.S. §402, and the former section remains in full force and effect. Therefore, we likewise find this argument without merit.[7]

Accordingly, we affirm the Board's decision finding Claimant ineligible for unemployment compensation benefits pursuant to Section 402(e) of the Law, 43 P.S. §802(e).

_____
DAN PELLEGRINI, Senior Judge

---

[7] Notably, Claimant has made no argument with respect to and has not challenged on appeal the Board's findings pursuant to Section 402(e) of the Law.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tyrone Hall,               :
                Petitioner  :
                             :
       v.                :
                             :
Unemployment Compensation Board :
of Review,               :
                Respondent :  No. 709 C.D. 2015

**O R D E R**

AND NOW, this 9th day of <u>March</u>, 2016, the order of the Unemployment Compensation Board of Review dated March 11, 2015, at No. B-576035, is affirmed.

_____
DAN PELLEGRINI, Senior Judge