IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Patricia Gadson,<br>    Petitioner | : |
| | : |
| | : |
| v. | : No. 2290 C.D. 2015 |
| | : Submitted: May 20, 2016 |
| Unemployment Compensation | : |
| Board of Review, | : |
|    Respondent | : |

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI                    FILED: June 9, 2016


Patricia Gadson (Claimant) petitions *pro se* for review of an order of the Unemployment Compensation Board of Review (Board) which affirmed the decision of an unemployment compensation referee (Referee) finding her ineligible for unemployment compensation (UC) benefits under Sections 401, 401(c), 4(u) and 404(d) of the Unemployment Compensation Law (Law)[1] and assessing a non-

---

[1] Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§751–918.10. Section 401 of the Law provides, in part, that "compensation" shall be payable to an employee who is or becomes unemployed. Section 4(u) of the Law defines the term "unemployed." Section 404(d) of the Law provides, in part, that an eligible employee who is unemployed shall be paid compensation in an amount equal to his weekly benefit rate less any remuneration "paid or payable to him with respect to such week for services performed which is in excess of his partial benefit credit."

fraud overpayment of emergency unemployment compensation benefits in the amount of $5,121 under Section 4005 of the Emergency Unemployment Compensation Act of 2008 (EUC Act).[2] For the reasons that follow, we vacate and remand.

## I.

Claimant was employed by Communities Putting Prevention to Work as a Project Manager, was let go due to downsizing and received UC benefits effective October 31, 2010. After exhausting "normal" UC benefits, she began receiving emergency unemployment compensation (EUC) benefits on May 31, 2011. From September-October 2011[3] to January 31, 2012, Claimant was employed by Turning Points for Children (Employer) in a seasonal, part-time capacity.[4]

---

[2] Title IV of the Supplemental Appropriation Act of 2008, Public Law 110–252, 122 Stat. 2323. The provisions of the EUC Act are found in the Note to 26 U.S.C. §3304.

[3] During a hearing, the Referee noted that the record indicates that Claimant's first day at work was September 19, 2011, but Claimant maintained that she did not start until October 2011.

[4] In her brief to this Court, Claimant describes the nature of her employment with Employer:

> I was fully unemployed until October of 2011 when I was hired as a part time/per diem seasonal worker for [Employer] for their [sic] Brighter Holiday Program. I was hired at $20.00 per hour. I had no office or desk at [Employer's] site and worked exclusively from home soliciting businesses for toys for young children who received services from [Employer]. I made my own schedule based on the success of my solicitation and organization of volunteers. I worked between 5 and 25 hours per week based on work that I completed. I did not have a schedule I followed and I submitted my time to [Employer] bi[-]weekly and applied for

**(Footnote continued on next page…)**

2

In March 2015, the Lancaster UC Service Center (Service Center) notified Claimant that her benefits may be temporarily or permanently terminated due to her "fail[ing] to report, underreport[ing] earnings, holiday pay or vacation pay." (Record (R.) Item No. 3.) The Service Center explained that "Information received in our office from [Employer] indicates that you overreported/underreported your earnings. The week(s) involved with this issue is/are 10/08/11-10/29/11, 11/19/11, 12/3/11-1/21/12."[5] (*Id.*) Claimant responded indicating that the wages she provided and not those provided by Employer were correct, and that the reason for the discrepancy was as follows:

**(continued…)**

> partial benefits bi-weekly as my average pay was between $175.00 and $225.00 per week. I stayed in the position until late January of 2012. My paycheck increased slightly closer to Christmas as we set up a shop where parents could come and pick toys out for their children.

(Petitioner's brief at 7.)

[5] The Service Center provided the reported amounts, which are as follows:

| Week Ending | Claimant's Reported Earnings | Employer's Reported Earnings |
| --- | --- | --- |
| 10/8/11 | $0.00 | $245.00 |
| 10/15/11 | $0.00 | $250.00 |
| 10/29/11 | $210.00 | $250.00 |
| 11/19/11 | $75.00 | $230.00 |
| 12/3/11 | $150.00 | $300.00 |
| 12/10/11 | $200.00 | $335.00 |
| 12/17/11 | $150.00 | $605.00 |
| 12/24/11 | $200.00 | $375.00 |
| 1/21/12 | $150.00 | $320.00 |

(R. Item No. 3.)

3

It appears that the reported pay periods do not line up on the grid above. As this was 4 yrs [sic] ago I no longer have pay stubs … from this part-time employer. I did report my weekly earnings as requested [and] the amounts that are listed by the employer are incorrect. I worked 10-12 hrs [sic] per week at 20.00 per hour. I was paid bi-weekly but reported my earnings … weekly as requested.

(*Id.*)

The Service Center determined that Claimant received an overpayment of EUC benefits because she received all of her regular UC entitlement and was subsequently determined not to be an exhaustee of regular UC, and classified the overpayment as fraud. In explaining the classification of "fraud," the Service Center reasoned, "Pattern of behavior; more than one employer where wages were underreported or totally unreported." (R. Item No. 4.)

The Service Center then issued five separate determinations. Three of the determinations denied EUC benefits under Sections 401(c), 401, 4(u) and 404(d) of the Law, and Section 4001(d)(2) of the EUC Act for nine intermittent claim weeks starting with the week ending October 8, 2011, and ending with the week ending January 21, 2012. The fourth determination assessed a $5,121 fraud overpayment under Sections 4005(a), 4005(b) and 4005(c) of the EUC Act, 26 U.S.C. §3304 Note. The fifth determination assessed eleven penalty weeks under Section 801(b) of the Law, 43 P.S. §871(b), and a fifteen percent penalty in the amount of $768.15 under Section 801(c) of the Law, 43 P.S. §871(c).

Claimant appealed all five determinations alleging that she reported her income based on what she was paid for each relevant week. She stated that the bi-weekly claim form that she completed online requested that she report her actual earnings and also estimate her earnings for the upcoming two weeks, and that the Service Center erred in finding that Claimant reported her estimated earnings as her actual earnings.

## II.

Before the Referee,[6] Claimant testified that she applied for UC benefits after she had been laid off from her previous job in November 2010. She testified that she had read the UC handbook and was aware of the reporting requirements. She explained that she failed to report her income from October 8, 2011, to January 21, 2012, because "I noticed here the first two weeks I reported zero and that's because I did not receive a check from [Employer] until the end of the month. And when I did, I reported my earnings and I reported my estimated earnings – what I was planning to work during the week." (R. Item No. 9 at 6.) She acknowledged that she was aware of how much she would be making and what the gross amount would be, but did not report that amount because, based on her understanding, she was only to report money that she had physically received.

With regard to the finding that she underreported her income, Claimant testified that "I don't believe I underreported my income…. [E]ven what

___

[6] Employer was notified of the date, time and place of the hearing but did not appear for the hearing.

I wrote in my appeal is that I was asked to estimate … report what it was I earned and then report – like estimate what I was going to make in the next week." (*Id.*) She stated that she did not know why she did not estimate the previous two weeks, but that she just estimated what she could work because she did not have office hours. Claimant testified that she worked from home anywhere between five and twenty hours a week, and that she estimated what she planned on working the next week and reported that.

Claimant further testified that she received $1,138 in May 2012 because she was still unemployed, explaining that her job with Employer was seasonal. After that ended, she took a part-time job as a substitute teacher and made approximately $114 a week. She reported every other week because she did not work consistently as a substitute teacher. She stated that she did not report her earnings consistently because she was not working consistently. She also denied any wrongdoing or fraudulent behavior.

The Referee found Claimant's statements denying any wrongdoing and her testimony that she reported her earnings by estimating her earnings to be incredible and unconvincing. The Referee also found that Claimant underreported her earnings and failed to report her full and correct earnings during certain weeks. Accordingly, the Referee determined that Claimant must be disapproved benefits for the weeks at issue under Sections 401, 401(c), 4(u) and 404(d) of the Law. With regard to the Service Center's determination of a fraud overpayment, the Referee found nothing in the record that indicated that Claimant deliberately misled the UC authorities to receive benefits to which she was not entitled.

6

However, he found that Claimant was overpaid $5,121 under the non-fraud overpayment provisions of Sections 4005(b) and 4005(c) of the EUC Act. Moreover, the Referee held that based on Section 801(b) of the Law and Section 4005(a)(1) of the EUC Act, Claimant would not be penalized eleven weeks of benefits because there was no competent evidence that Claimant deliberately misled the Service Center to receive benefits to which she was not entitled. Finally, the Referee concluded that under Section 801(c) of the Law, Claimant was not liable to pay a penalty of $768.15. Claimant appealed to the Board which adopted and incorporated the Referee's determination in whole. This appeal followed.

## III.

### A.

On appeal,[7] Claimant argues that the Referee's Finding of Fact Number 4[8] is erroneous because she reported all of her earnings and projected earnings. She states that she had to project hours that she planned on working and as a per diem, seasonal employee, who worked from home based on Employer's needs, she often would work either more or less than the hours she projected.

---

[7] Our review is limited to determining whether the Board's findings of fact are supported by substantial evidence in the record, whether errors of law were committed, whether agency procedure was violated, or whether constitutional rights were violated. *Gillins v. Unemployment Compensation Board of Review*, 633 A.2d 1150, 1153 (Pa. 1993). We have defined "substantial evidence" as such "relevant evidence that a reasonable mind might consider adequate to support a conclusion." *Palladino v. Unemployment Compensation Board of Review*, 81 A.3d 1096, 1100 n. 3 (Pa. Cmwlth. 2013).

[8] Finding of Fact Number 4 provides that "Claimant failed to report her correct earnings or underreported her earnings during claim weeks October 8, 2011, through January 21, 2012." (R. Item No. 10.)

A claimant bears the burden of establishing her eligibility for UC benefits. *Paglei v. Unemployment Compensation Board of Review*, 37 A.3d 24, 26 (Pa. Cmwlth. 2012). Under Section 401(c) of the Law, a claimant must make "a valid application for benefits with respect to the benefit year for which compensation is claimed" and her claim must be made in the "proper manner." Section 401(c) of the Law, 43 P.S. §801(c). The UC handbook instructs that after a claimant has filed her initial application, she must file a claim for each week in which she is totally or partially unemployed.[9] Moreover, a claimant's bi-weekly claim must be filed during the week *immediately following* the two weeks being claimed.[10]

Claimant's weekly earnings figures as reported by Employer differ from those reported by Claimant when filing her bi-weekly claims for the weeks at issue. Claimant explained the discrepancies by stating, "It appears that the reported pay periods do not line up on the grid above," and simply asserting that her values are correct. (R. Item No. 3.) She also explained that when reporting her earnings, she would estimate what she was going to earn in the following week and report that value; that amount would sometimes be incorrect because she would end up working either more or less than the projected hours. This is in direct

---

[9] Pennsylvania Department of Labor & Industry, Unemployment Compensation Benefits website at http://www.dli.pa.gov/keep-it-working/individuals/Pages/Maintaining-Your-Eligibility-for-Benefits.aspx#.Vz3xlDbD9aQ (last visited May 19, 2016).

[10] Pennsylvania Department of Labor & Industry, Unemployment Compensation Benefits website at http://www.dli.pa.gov/keep-it-working/individuals/Pages/Maintaining-Your-Eligibility-for-Benefits.aspx#.Vz3xlDbD9aQ (last visited May 19, 2016).

opposition to the handbook's instructions, which Claimant admitted to being familiar with, of filing immediately after the claimed two weeks, thereby requiring Claimant to look backwards at the previous two weeks to report her actual earnings and not guess the amount of money she would potentially make by looking at the coming week. By not reporting/underreporting her earnings during the time at issue, Claimant received a total of $5,121.00 in EUC benefits.

Citing to this Court's recent decision in *Stock v. Unemployment Compensation Board of Review*, ___ A.3d ___ (Pa. Cmwlth., No. 415 C.D. 2015, filed April 8, 2016), the Board asserts that because Claimant did not act with fraudulent intent in the receipt of the EUC benefits, her ineligibility under Section 401(c) of the Law should not have been deemed total and the overpayment must be recalculated.

In *Stock*, we held that "where a claimant receives EUC benefits to which he is 'not entitled' due to an 'honest mistake' on his part and not due to fraud or fault," the claimant will not be deemed totally ineligible under Section 401(c) of the Law. Slip op. at 15. Instead, we instructed:

> The Board should have calculated the non-fraud overpayment by first determining the amount of EUC and [Federal Additional Compensation] [(]FAC[)] benefits that Claimant would have received had he properly reported his past time earnings and then subtracting that amount from the amount Claimant actually received. The difference between these sums would equal the amount of the non-fraud overpayment.

9

Slip op. at 20.

Because the sum of Claimant's weekly overpayments was $876, the Board asks us to remand so that it can reduce the non-fraud overpayment under Sections 4005(b) and 4005(c) of the EUC Act owed by Claimant from $5,121 to $876. We will so order.

**B.**

Claimant also requests a complete waiver of repayment of benefits under Section 4005(b) of the EUC Act[11] because the Referee found that she did not deliberately mislead to receive the benefits to which she was not entitled.

In addressing whether a claimant's waiver of repayment of benefits request should be granted, this Court in *Gnipp v. Unemployment Compensation Board of Review*, 82 A.3d 522 (Pa. Cmwlth. 2013), held that:

> "[t]he litigation [before the referee and the Board] concerned only whether Claimant had received an overpayment of benefits and whether any overpayment

---

[11] Section 4005(b) of the EUC Act requires an individual who has received an overpayment of EUC benefits to repay the amount to the applicable state agency, except that the agency may waive repayment if it determines that:

> (1) the payment of such emergency unemployment compensation was without fault on the part of any such individual; and

> (2) such repayment would be contrary to equity and good conscience.

26 U.S.C. §3304 note.

10

was the result of fraud. That litigation determined that Claimant received a non-fraud overpayment, and Claimant does not challenge that conclusion. As the UC Service Center's instructions explained, a request for a waiver of repayment must be decided in a separate proceeding. The request must first be made to the Department by submitting the appropriate form and an appeal can then be taken if a waiver is denied."

In short, eligibility for a waiver is a determination that must be made in a separate proceeding.

*Id.* at 525 (quoting *Rouse v. Unemployment Compensation Board of Review*, 41 A.3d 211, 213 (Pa. Cmwlth. 2012)) (citation omitted).

Similarly, in this case, the only issue before the Referee and the Board concerned whether Claimant had received an overpayment of benefits and whether the overpayment was fraudulent. As such, Claimant's request for waiver must be raised in a separate proceeding. Moreover, even if it could be raised in this proceeding, Claimant did not raise the issue by submitting a form requesting a waiver of repayment of benefits to the Service Center and, ignoring that, did not raise the issue of repayment before the Referee or the Board.

Accordingly, we vacate the Board's order and remand the matter to the Board for a recalculation of the amount of Claimant's non-fraud overpayment.

DAN PELLEGRINI, Senior Judge

11

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Patricia Gadson, : 
          Petitioner : 
           : 
          v. : No. 2290 C.D. 2015
           : 
Unemployment Compensation : 
Board of Review, : 
          Respondent : 

# **O R D E R**

AND NOW, this 9th day of June, 2016, the order of the Unemployment Compensation Board of Review dated September 28, 2015, at No. B-582700, is hereby vacated and the matter is remanded to the Board for a recalculation of the amount of Patricia Gadson's non-fraud overpayment.

Jurisdiction relinquished.

_____
DAN PELLEGRINI, Senior Judge