## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Charlize Cunningham, | : | |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| Unemployment Compensation | : | |
| Board of Review, | : | No. 377 C.D. 2023 |
| Respondent | : | Argued: December 9, 2024 |

BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
                  HONORABLE LORI A. DUMAS, Judge
                  HONORABLE STACY WALLACE, Judge

OPINION BY
JUDGE WOJCIK                                           FILED: January 24, 2025


Charlize Cunningham (Claimant) petitions this Court for review of the Unemployment Compensation (UC) Board of Review's (UCBR) February 3, 2023 order affirming the Referee's decision that found Claimant ineligible for Pandemic Unemployment Assistance (PUA) benefits under the Coronavirus Aid, Relief, and Economic Security Act of 2020 (CARES Act).[1]  Claimant essentially presents one issue for this Court's review: whether the UCBR erred by concluding that she was not a *covered individual* entitled to PUA under Section 2102(a)(3) of the CARES Act, 15 U.S.C. §9021(a)(3), while she served penalty weeks in connection with a

---

[1]         PUA provides up to 79 weeks of benefits to qualifying individuals who are otherwise able to work and available for work within the meaning of applicable state law, except that they are unemployed, partially unemployed, or unable or unavailable to work due to COVID-19 related reasons, as defined in the CARES Act[, 15 U.S.C. §§9001-9141].

https://pua.benefits.uc.pa.gov/vosnet/default.aspx (last visited January 23, 2025).  This Court may take judicial notice of public information on an official government website.  *See Paluch v. Department of Corrections.*, 175 A.3d 433 (Pa. Cmwlth. 2017); *see also Hill v. Department of Corrections.*, 64 A.3d 1159 (Pa. Cmwlth. 2013).

2017 regular UC overpayment pursuant to Section 801(b) of the UC Law (Law).[2,3] After review, this Court affirms.

## Background

On March 27, 2020, Congress passed, and then-President Donald J. Trump signed into law, the CARES Act, which provided emergency assistance and health care response for persons, families, and businesses affected by the COVID-19 pandemic.[4,5] The CARES Act afforded financial assistance for workers who became unemployed, partially employed, or unable or unavailable to work due to the COVID-19 pandemic. Relevant here, the CARES Act offered PUA as temporary income assistance to *covered individuals*. *See Kozicki v. Unemployment*

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §871(b) (relating to false statements and representations to obtain or increase compensation).

[3] Claimant presents three issues in her Statement of Questions Involved: (1) whether Claimant was disqualified from receiving regular UC benefits under the Law because she was serving penalty weeks in connection with a 2017 overpayment; (2) whether Claimant was a *covered individual* under Section 2102(a)(3) of the CARES Act to qualify for PUA when she established that she was ineligible for regular state UC benefits while serving penalty weeks, she was otherwise able and available for work, and her place of employment closed due to the COVID-19 pandemic; and (3) whether the UCBR erred by relying on the United States Department of Labor's ambiguous guidance to interpret the Law's penalty week provision in a manner that was contrary to the plain meaning of the text. *See* Claimant Br. at 3. These issues are subsumed in, and will be addressed relative to, the issue as restated.

[4] Relative to the COVID-19 pandemic, Pennsylvania Governor Tom Wolf issued a March 19, 2020 Executive Order that temporarily closed all of Pennsylvania's non-life-sustaining businesses. *See Friends of Danny DeVito v. Wolf*, 227 A.3d 872 (Pa. 2020).

[5] The original CARES Act provided up to 39 weeks of PUA. Congress twice thereafter amended the CARES Act. On December 27, 2020, in the Continued Assistance for Unemployed Workers Act of 2020, Pub. L. No. 116-260, §§201, 203-204, 206, Congress extended the CARES Act's unemployment provisions, including 11 additional weeks (for up to 50 maximum weeks) of PUA, through March 14, 2021. On March 11, 2021, in the American Rescue Plan Act of 2021, Pub. L. No. 117-2, §§9011, 9013-9014, 9016, Congress further extended PUA and other unemployment benefits through September 6, 2021 (for up to 79 maximum weeks of PUA).

*Compensation Board of Review*, 299 A.3d 1055 (Pa. Cmwlth. 2023); *see also* Section 2102(b) of the CARES Act, 15 U.S.C. §9021(b). Section 2102(a)(3)(A) of the CARES Act related to PUA defines *covered individual*, in relevant part, as

> an individual who--
>
> **(i)** is **not eligible for regular compensation** . . . under [s]tate . . . law . . . , including an individual who has exhausted all rights to regular unemployment . . . under [s]tate . . . law . . . ;
>
> **(ii)** provides self-certification that the individual--
>
>> **(I)** is otherwise **able to work and available** for work within the meaning of applicable [s]tate law, except the individual is unemployed, partially unemployed, or unable or unavailable to work because--
>>
>> * * *
>>
>> **(jj)** the individual's **place of employment is closed as a direct result of the COVID-19 public health emergency**; [and]
>>
>> * * *
>
> **(iii)** provides documentation to substantiate employment . . . not later than 21 days after the later of the date on which the individual submits an application for [PUA] under this section . . . .

15 U.S.C. §9021(a)(3)(A) (emphasis added).

The CARES Act required states desiring to administer PUA to enter into agreements with the United States (U.S.) Department of Labor (USDOL), under which the USDOL would provide 100% of the PUA states paid to unemployed

3

workers.[6] *See* Section 2102(f) of the CARES Act, 15 U.S.C. §9021(f). Pennsylvania was among the states that executed an agreement with the USDOL to provide PUA.[7]

Congress computed the amounts of PUA a state paid for covered individuals "under the provisions of **applicable [s]tate law**[.]" Section 625.6(a) of the USDOL's Regulations, 20 C.F.R. §625.6(a) (2006) (emphasis added).[8] Congress also expressly made individual PUA eligibility subject to the same terms and conditions as regular UC benefits **under state law**, including appeal procedures, overpayment determinations, and work availability requirements. *See* Section 2102(a)(3)(A)(ii)(I), (c)(5)(B)(ii), (d)(2), (d)(4) of the CARES Act, 15 U.S.C. §9021(a)(3)(A)(ii)(I), (c)(5)(B)(ii), (d)(2), (d)(4).

---

[6] "The [UC] program is a joint federal/state system in which each state receives federal funds and administers the program." *Teledyne Columbia-Summerill Carnegie v. Unemployment Compensation Board of Review*, 634 A.2d 665, 669 (Pa. Cmwlth. 1993). "A state is free to design its [UC] law and establish its own eligibility requirements so long as it does not conflict with the federal statutes." *Cugini v. Unemployment Compensation Board of Review*, 512 A.2d 1169, 1173 (Pa. 1986) (plurality). The CARES Act distributed PUA to states, requiring: "The [USDOL] Secretary shall provide the [COVID-19 unemployment] assistance . . . through agreements with [s]tates which, in the judgment of the [USDOL] Secretary, have an adequate system for administering such assistance through existing [s]tate agencies, including procedures for identity verification or validation and for timely payment, to the extent reasonable and practicable." Section 2102(f)(1) of the CARES Act, 15 U.S.C. §9021(f)(1). The USDOL reimbursed states 100% for the PUA they provided, plus administrative costs. *See* Section 2102(f)(2) of the CARES Act, 15 U.S.C. §9021(f)(2). The U.S. Treasury funded the CARES Act's PUA program using monies it transferred from the general fund into the existing Unemployment Trust Fund as directed by the USDOL Secretary to facilitate payments to the states. *See* Section 2102(g) of the CARES Act, 15 U.S.C. §9021(g).

[7] The agreement between the USDOL and Pennsylvania's Department of Labor and Industry (Department) is not included in this record or on the USDOL or Department websites.

[8] Although Part 625 of Title 20 of the USDOL's Regulations applies to Disaster Unemployment Assistance, Section 2102(h) of the CARES Act made Part 625 applicable to PUA. *See* 15 U.S.C. §9021(h); *see also Kozicki*, 299 A.3d at 1059-60 (Section 625.6(a) of the USDOL's Regulations applied to PUA).

In addition, in Section 2103(a) of the CARES Act, Congress authorized the USDOL Secretary to "issue **clarifying guidance to allow [s]tates to interpret their [s]tate [UC] laws** in a manner that would provide maximum flexibility [for] reimbursing employers as it relates to timely payment and **assessment of penalties** and interest pursuant to such [s]tate laws." 15 U.S.C. §9022 (emphasis added). On April 5, 2020, the USDOL issued Unemployment Insurance Program Letter (UIPL) 16-20 (UIPL 16-20) to "provide states with operating, financial, and reporting instructions for the PUA program."[9] UIPL 16-20, Attachment II, declared:

---

[9] www.dol.gov/sites/dolgov/files/ETA/advisories/UIPL/2020/UIPL_16-20.pdf (last visited January 23, 2025). This Court has explained:

> The Employment and Training Administration of the [USDOL] interprets federal law requirements pertaining to [UC] as part of its role in the administration of the [f]ederal-[s]tate [UC] program. 62 Fed. Reg. 60,104 (November 6, 1997). These interpretations are issued in [UIPLs] to the [Department] and other state employment security agencies. *Id*. The UIPLs are published in the Federal Register in order to inform the public. *Id*.

*Montgomery County Head Start v. Unemployment Compensation Board of Review*, 938 A.2d 1137, 1140 n.6 (Pa. Cmwlth. 2007).

Claimant and the UCBR contend that UIPL 16-20 Change 2 controls this case, which will be discussed *infra*. *See* UCBR Br. at 11-13; *see also* Claimant Reply Br. at 7. This Court has consistently held that UIPLs are merely interpretations of federal law that hold little persuasive value and are not binding on this Court or Commonwealth agencies. *See Kolenich v. Unemployment Compensation Board of Review*, 269 A.3d 615 (Pa. Cmwlth. 2021); *see also Montgomery County Head Start*. Notwithstanding, UIPL 16-20 is one factor the Court may consider when interpreting the Law, particularly where PUA is administered pursuant to an agreement with the USDOL and the program is 100% federally funded. The Pennsylvania Supreme Court has recognized:

> [UIPLs] play an important role in maintaining federal certification for a given state. Thus, as one federal appellate court has explained:
>
> > Each year the [USDOL] Secretary . . . examines the laws of each state and certifies those states which comply with the minimum federal standards. The [USDOL] informs state agencies of the minimum federal requirements they must meet to remain certified primarily by issuing [UIPLs].

**(Footnote continued on next page…)**

States must comply with the provisions contained in the states' [a]greements with the [USDOL] to administer PUA and all applicable PUA funding instruments.[10] States must perform such duties and functions in accordance with Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards at 2 C.F.R. Part 200 and 2 C.F.R. Part 2900 applicable to all grants and cooperative agreements. Additionally, the [USDOL's] administrative requirements for grants and cooperative agreements at 29 C.F.R. Parts 31, 32, 38, 96, and 98 apply to grant funds provided for these activities.

UIPL 16-20, Attachment II, at 1.[11]

On April 27, 2020, the USDOL issued UIPL 16-20 Change 1.[12] Question 37 therein asked: "When the state requires that an individual must serve penalty weeks before being eligible for regular UC, may the individual use those weeks of PUA to satisfy the penalty weeks?" UIPL 16-20 Change 1, Attachment I,

---

In determining whether a state's [UC] system is in compliance with federal standards, the [USDOL] Secretary . . . relies on the positions he has taken in the letters. A state which is not in compliance can be decertified. . . .

*Cabais v. Egger*, 690 F.2d 234, 236 (D.C. Cir. 1982) (footnote omitted).

*U.S. Steel Corporation (USX Clairton Works) v. Unemployment Compensation Board of Review*, 858 A.2d 91, 98 (Pa. 2004). Moreover, this Court has cited to UIPL 16-20 in cases involving claimants' PUA eligibility. *See Seader v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 1328 C.D. 2022, filed Nov. 17, 2023); *see also Sindoni v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 621 C.D. 2021, filed Mar. 14, 2022). Unreported decisions of this Court issued after January 15, 2008, may be cited as persuasive authority pursuant to Section 414(a) of this Court's Internal Operating Procedures. 210 Pa. Code § 69.414(a). The unreported cases included herein are cited for their persuasive value.

[10] Because the agreement is not included in the record or posted on the USDOL's or the Department's websites, this Court is unable to review its terms relative to this appeal.

[11] www.dol.gov/sites/dolgov/files/ETA/advisories/UIPL/2020/UIPL_16-20.pdf (last visited January 23, 2025).

[12] www.dol.gov/sites/dolgov/files/ETA/advisories/UIPL/2020/UIPL_16-20_Change_1.pdf (last visited January 23, 2025).

at I-9.  The USDOL responded: "**State law will determine whether the weeks of filing for PUA may be used to satisfy penalty weeks for a disqualification**." *Id*. (emphasis added).

On July 21, 2020, the USDOL issued UIPL 16-20 Change 2,[13] further clarifying, in relevant part:

> 13. <u>Question</u>: How might penalty weeks affect an individual's eligibility for PUA, depending on my state law?  Since addressing the question of penalty weeks with Question 37 of Attachment I to UIPL <u>No. 16-20[] Change 1</u>, the [USDOL] received a few follow-up questions.  We provide this additional clarification.
>
> > A. Is an individual eligible for PUA when the state law provides that <u>an individual is eligible for regular UC, but must serve penalty weeks before receiving regular UC</u>?
> >
> > <u>Answer</u>: No.  Where state law says that the individual is eligible for regular UC, but not paid until the penalty weeks are served, the individual does not meet the eligibility requirement in Section 2102(a)(3)(A)(i) of the CARES Act to be ineligible for regular UC.  Therefore, the individual may not receive PUA.  Additionally, because the individual is eligible for regular UC and ineligible for PUA, the individual cannot serve fraud penalty weeks through a PUA claim.
> >
> > B. Is an individual eligible for PUA when the state's law requires that an individual serve penalty weeks <u>before being eligible for regular UC</u>?
> >
> > <u>Answer</u>: It depends.  If, under the state's law, the individual is not eligible for regular UC, [Pandemic Emergency Unemployment Compensation (PEUC) under Section 2107 of the CARES Act, 15 U.S.C. §9025], or [extended

---

[13] *See* www.dol.gov/sites/dolgov/files/ETA/advisories/UIPL/2020/UIPL_16-20_Change_2.pdf (last visited January 23, 2025).

benefits] while serving the penalty weeks, and the individual is unemployed, partially unemployed, or unable or unavailable to work because of one of the COVID-19 related reasons listed in Section 2102(a)(3)(A)(ii)(I) of the CARES Act, the individual may be eligible for PUA. . . .

UIPL 16-20 Change 2, Attachment I, Question 13, at I-6 (underline emphasis in original). That document again declared: "**State law will determine whether the weeks of filing for PUA may be used to satisfy such penalty weeks for regular UC.**" *Id.* (emphasis added).

Therefore, **in analyzing a claimant's eligibility to receive federal PUA**, **this Court applies state law**. *See Stock v. Unemployment Compensation Board of Review*, 136 A.3d 1094 (Pa. Cmwlth. 2016) (terms and conditions of the Law applicable to regular UC claims applied to claims for federal Emergency UC (EUC) benefits under Title IV of the Supplemental Appropriations Act of 2008 (EUC Act of 2008));[14] *see also Pataki v. Unemployment Compensation Board of Review*, 483 A.2d 581, 584 (Pa. Cmwlth. 1984) (eligibility for a temporary program of federal Special Unemployment Assistance (SUA) instituted by Title II of the

---

[14] Title IV of the Supplemental Appropriations Act of June 30, 2008, P.L. 110-252, 122 Stat. 2323, Sections 4001-4007, 26 U.S.C. §3304 note:

EUC benefits [we]re federally funded and were created by Congress pursuant to the EUC Act of 2008. The EUC benefits programs [we]re administered by the states. In Pennsylvania, unemployed claimants who [we]re not eligible for regular [UC] benefits from Pennsylvania, another state, the federal government, or Canada [could] be eligible for EUC benefits. Eligibility requirements for receipt of regular unemployment benefits [we]re also applicable to EUC benefits, along with additional requirements imposed by the EUC Act of 2008.

*Gnipp v. Unemployment Compensation Board of Review*, 82 A.3d 522, 523 n.2 (Pa. Cmwlth. 2013) (citations omitted).

Emergency Jobs and Unemployment Assistance Act of 1974[15] (SUA Act of 1974) determined by applying state UC laws).

> The penalty week provision in Section 801(b) of the Law provides:

> Whoever makes a false statement knowing it to be false, or knowingly fails to disclose a material fact to obtain or increase any compensation or other payment under this [Law] . . . , **may be disqualified** in addition to such week or weeks of improper payments for a penalty period of five weeks and for not more than one additional week for each such week of improper payment . . . . The **penalty weeks** herein provided for **shall be imposed against any weeks with respect to which the claimant would otherwise be eligible for compensation**, under the provisions of this [Law], which begin within the [10-]year period following the end of the benefit year with respect to which the improper payment or payments occurred.

43 P.S. §871(b) (emphasis added).


## I. Facts

The parties do not dispute the relevant facts. Claimant was employed as a counter manager at Nordstrom (Employer) at the King of Prussia Mall (Mall) beginning in April 2019. On March 14, 2020, Claimant's manager texted her that the Mall was closed due to the COVID-19 pandemic, and she should not return to work. After Claimant received her final paycheck from Employer in approximately April 2020, she applied to the Department of Labor and Industry's Office of UC Benefits (Department) for regular UC benefits. The Department notified Claimant that she had to serve 15 penalty weeks related to a prior UC claim. *See* Certified Record (C.R.) Item 8, April 27, 2021 Notes of Testimony (N.T.) at 6. Claimant began serving her regular UC penalty weeks on June 20, 2020. *See* N.T. at 12.

---

[15] 26 U.S.C. §3304 note. SUA was intended to supplement state benefits. Like PUA, ineligibility under any other federal or state programs was an express prerequisite to eligibility for SUA benefits, and state UC laws applied.

On July 30, 2020, Claimant applied for PUA with an effective date of July 26, 2020. On November 16, 2020, the Department issued a Pandemic Unemployment Disqualifying Determination informing Claimant that she did not qualify for PUA because PUA can only be paid to a claimant "when no other program eligibility is available[,]" and the Department determined that Claimant "may be" eligible for regular UC.[16] Supplemental Certified Record at 4. That same day, the Department also issued a Notice of Determination of Non-Fraud PUA Overpayment reflecting that Claimant had received a PUA overpayment in the amount of $525.00 for the week ending August 1, 2020, when she was "financially eligible for regular [UC] benefits." C.R. at 14. On December 1, 2020, Claimant timely appealed from the Department's Determinations.

On April 27, 2021, a Referee conducted a telephone hearing at which Claimant testified that when she applied for regular UC benefits: "They told me I wasn't eligible for regular [UC] benefits at that point and that I had to serve my penalty weeks [related to the 2017 overpayment]." N.T. at 6. Claimant confirmed that she received a $525.00 PUA payment for the week ending on August 1, 2020,[17] but did not receive regular UC benefit payments during the time that she was serving her penalty weeks. *See id*. at 7-8. Claimant recalled that her penalty weeks ended,

---

[16] Although not included with the transmittal of the Department's Certified Record, the Pandemic Unemployment Disqualifying Determination is clearly referenced and relied on therein, and the Department included it in the Supplemental Certified Record. *See* C.R. at 17, 19.

[17] On August 27, 2020, Employer verified: "For the period of April 5, 2020, to August 1, 2020[,] C[laimant] was an active employee with no scheduled hours. As of August 3, 2020, C[laimant] ha[d] been actively working with scheduled shifts." C.R. at 12.

10

and she began receiving regular UC benefits again, on October 10, 2020.[18]  *See id.* at 8, 12.

On May 5, 2021, the Referee affirmed the Department's Determinations, declaring:

> According to [UIPL] 16-20 Change 2, an individual who would otherwise be eligible for traditional unemployment had penalty weeks not been imposed, is not eligible for PUA until the penalty weeks are fully served and traditional unemployment is exhausted.  As such, [] [C]laimant is ineligible for benefits under Section 2102(a)(3) of the CARES Act.

Referee Dec. at 3.  Claimant appealed to the UCBR.

On February 3, 2023, the UCBR adopted and incorporated the Referee's findings of fact and conclusions of law, and affirmed the Referee's Decision, stating:

> [C]laimant does not meet the standard for a "covered individual" for PUA.  Federal guidance within [UIPL] 16-20[] Change 2, provides a clarification to the phase [sic] "not eligible for regular [UC] or extended benefits under [s]tate or [f]ederal law[,]" [*id*.,] and how it relates to [C]laimant[']s imposed penalty weeks under state Law.  It provides a distinction between state laws that render[] a claimant **not eligible** until serving penalty weeks and state laws that says [sic] that the individual is **eligible for regular UC**, **but not paid until the penalty weeks are served**.  Where the state law requires the latter, **the claimant will not be eligible for PUA**. . . .  Section 801(b) of the Law requires [] [C]laimant to (1) be eligible for regular UC and (2) serve the penalty for an otherwise eligible claim week.  This is different than other states' laws that may require penalty weeks to be served before eligibility can be established.  In other words, penalty

---

[18] Claimant testified that she returned to work with Employer part time in January or February of 2021 until, due to her compromised immune system and co-worker illnesses, her physician recommended that she stop working until either she was vaccinated against COVID-19 or conditions changed.  *See* N.T. at 9, 11.

11

weeks imposed under our Law are not a barrier to eligibility, but, rather, proscribe payment for [] otherwise eligible claim weeks.

UCBR Dec. at 1-2 (emphasis in original). Claimant appealed to this Court.[19]

## II. Discussion

Because the parties do not dispute that Claimant's place of employment closed due to the COVID-19 pandemic and that she was able and available for work, the only issue before this Court is whether, under Section 801(b) of the Law, Claimant was eligible for regular UC benefits and, thus, ineligible for PUA during the time Claimant served her penalty weeks. This issue is a matter of first impression.

Claimant argues that the UCBR erred by concluding that she was not a *covered individual* entitled to PUA under Section 2102(a)(3) of the CARES Act - when her place of employment had closed due to the COVID-19 pandemic, she was able and available for work, and she was disqualified from and, thus, ineligible to receive regular UC benefits - while she was serving penalty weeks pursuant to Section 801(b) of the Law. Claimant contends that the UCBR's decision rendered her ineligible for both regular UC and PUA when Congress intended PUA to provide some degree of financial stability to unemployed workers, even those who were disqualified from regular state UC benefits.

---

[19] Derek Abrams and Community Legal Services, Inc. filed an *amicus curiae* brief in support of Claimant's appeal.

This Court's "'review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact were unsupported by substantial evidence.' *Miller v. Unemployment Compensation Board of Review*, 83 A.3d 484, 486 n.2 (Pa. Cmwlth. 2014)." *Talty v. Unemployment Compensation Board of Review*, 197 A.3d 842, 843 n.4 (Pa. Cmwlth. 2018). Challenges involving statutory interpretation are questions of law "subject to a *de novo* standard of review and a plenary scope of review." *Banfield v. Cortes*, 110 A.3d 155, 166 (Pa. 2015).

The UCBR retorts that it properly concluded Claimant was not a *covered individual* under the CARES Act because Section 801(b) of the Law falls squarely within the USDOL's UIPL No. 16-20 Change 2, Question 13, Answer A (Answer A), such that Claimant had to first be eligible for regular UC benefits before she could be disqualified under Section 801(b) of the Law (*i.e.*, Claimant was eligible for, but not paid, regular UC benefits while she served her 15 penalty weeks). The UCBR asserts that, based on Claimant's public policy argument, a claimant assessed penalty weeks would always be eligible for PUA, which conflicts with the Law.

Because eligibility for regular UC benefits for PUA purposes must be determined by interpretation and application of Section 801(b) of the Law,[20] this Court looks to the Statutory Construction Act of 1972 (SCA),[21] the objective of which is to ascertain and effectuate the General Assembly's intent when enacting it. *See* Section 1921(a) of the SCA, 1 Pa.C.S. §1921(a); *see also Commonwealth v. Rensel*, 315 A.3d 238 (Pa. Cmwlth. 2024). "[W]hen the words of a statute have a plain and unambiguous meaning, it is th[at] meaning which is the paramount indicator of legislative intent." *Snyder Brothers, Inc. v. Pennsylvania Public Utility Commission*, 198 A.3d 1056, 1071 (Pa. 2018), *order amended on reconsideration*, 203 A.3d 964 (Pa. 2019).

> When the statutory language is ambiguous, however, [courts] may ascertain the General Assembly's intent by considering the factors set forth in Section 1921(c) of the

---

[20] Under Pennsylvania law, "[a] claimant has the burden of proving his or her financial eligibility for UC benefits." *George v. Unemployment Compensation Board of Review*, 231 A.3d 1020, 1024 n.7 (Pa. Cmwlth. 2020).

[21] 1 Pa. C.S. §§1501-1991.

[SCA],[22] 1 Pa.C.S. §1921(c), and other rules of statutory construction. *See P[ennsylvania] Sch[ool] B[oards] Ass[ociation], Inc. v. Pub[lic] Sch[ool] Emp[loyees']. Ret[irement] B[oard]*, [863 A.2d 432, 436 (Pa. 2004)] (observing that "other interpretative rules of statutory construction are to be utilized only where the statute at issue is ambiguous").

*Ursinus College v. Prevailing Wage Appeals Board*, 310 A.3d 154, 171 (Pa. 2024). "A statute is ambiguous when there are at least two reasonable interpretations of the text." *JP Morgan Chase Bank N.A. v. Taggart*, 203 A.3d 187, 194 (Pa. 2019) (quoting *A.S. v. Pennsylvania State Police*, 143 A.3d 896, 905-06 (Pa. 2016)).

In the instant appeal, because Section 801(b) of the Law can be interpreted either that a claimant *is eligible for* but *disqualified from* receiving regular UC benefits while serving penalty weeks (Answer A scenario), or that a claimant's *disqualification* renders him/her *not eligible for* regular UC benefits until

---

[22] Section 1921(c) of the SCA states:

When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

1 Pa. C.S. §1921(c). Section 1922 of the SCA further lists presumptions applicable to statutory interpretation, including: (1) "the General Assembly does not intend a result that is absurd, impossible of execution[,] or unreasonable[;]" (2) "the General Assembly intends the entire statute to be effective and certain[;]" and (3) "the General Assembly intends to favor the public interest as against any private interest." 1 Pa. C.S. §1922(1), (2), and (5).

after the penalty weeks are served (UIPL No. 16-20 Change 2, Question 13, Answer B scenario), it is capable of more than one reasonable interpretation and, thus, is ambiguous. *See JP Morgan Chase Bank.* Accordingly, this Court applies the SCA's interpretive factors.

Preliminarily, an interpretation of a statute by an agency charged with administering it, like the UCBR in this instant matter, is one factor to be considered when ascertaining the General Assembly's intent, *see* Section 1921(c)(8) of the SCA, 1 Pa. C.S. §1921(c)(8), and it "is normally accorded deference, unless clearly erroneous." *Harmon v. Unemployment Compensation Board of Review*, 207 A.3d 292, 299 (Pa. 2019) (quoting *Harkness v. Unemployment Compensation Board of Review*, 920 A.2d 162, 171 (Pa. 2007)).[23] Notwithstanding, the Pennsylvania Supreme Court has "declined to accord **any** deference to an agency's interpretation of a statute where 'there is nothing in the record indicating that the [agency] had considered and decided [the] issue at a point prior to the instant litigation.'" *Harmon*, 207 A.3d at 300 (quoting *Malt Beverages Distributors Association v. Pennsylvania Liquor Control Board*, 974 A.2d 1144, 1154 (Pa. 2009)); *see also Kuharchik Construction, Inc. v. Commonwealth*, 236 A.3d 122 (Pa. Cmwlth. 2020).

This Court takes judicial notice that the Department's website reflects the UCBR's interpretation in this case: "In order to serve a penalty week, the claimant must file a claim for the week and be eligible for partial or full benefits."[24]

---

[23] *See also Marcellus Shale Coalition v. Department of Environmental Protection*, 292 A.3d 921 (Pa. 2023); *Corman v. Acting Secretary of Pennsylvania Department of Health*, 267 A.3d 561 (Pa. Cmwlth.), *aff'd*, 268 A.3d 1080 (Pa. 2021); *Mormak v. Unemployment Compensation Board of Review*, 579 A.2d 1383, 1386 (Pa. Cmwlth. 1990) ("Courts generally respect the special competence of [the] UCBR in making conclusions based upon its own administrative and enforcement experience.").

[24] *See* https://www.uc.pa.gov/unemployment-benefits/overpayment-of-benefits/pages/default.aspx#:~:text=Penalty%20weeks%20are%20served%20during%20any%20 **(Footnote continued on next page…)**

"While serving a penalty week, no monies are paid to the claimant. Penalty weeks are served during any week for which the claimant would otherwise be eligible for compensation . . . ."[25] However, as

> the record discloses no regulations, informal agency interpretations, policy statements[,] or other indication of [the Department's] interpretation of [the relevant portion of Section 801(b) of the Law] prior to this case, nor does the [UCBR] argue that its interpretation here should be given deference . . . , pursuant to *Harmon*, [this Court] will not give deference to the [UCBR's] interpretation . . . .

*Kuharchik Construction, Inc.*, 236 A.3d at 132. Accordingly, this Court's interpretation of the General Assembly's intent with respect to Section 801(b) of the Law controls in this case.

We first turn to the considerations in Section 1921(c) of the SCA to determine "[t]he occasion and necessity for the statute[,]" "[t]he circumstances under which it was enacted[,]" "[t]he mischief to be remedied[,]" and "[t]he object to be attained." 1 Pa. C.S. §1921(c)(1)-(4). The Pennsylvania Supreme Court has declared that Section 3 of the Law[26] "is . . . the keystone upon which the individual

---

week%20for,and%20be%20eligible%20for%20partial%20or%20full%20benefits (emphasis omitted) (last visited January 23, 2025).

[25] *See id*. (last visited January 23, 2025).

[26] Section 3 of the Law declares:

> Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of the Commonwealth. Involuntary unemployment and its resulting burden of indigency falls with crushing force upon the unemployed worker, and ultimately upon the Commonwealth and its political subdivisions in the form of poor relief assistance. Security against unemployment and the spread of indigency can best be provided by the systematic setting aside of financial reserves to be used as compensation for loss of wages by employes during periods when they become unemployed through no fault of their own. The principle of the

**(Footnote continued on next page…)**

16

sections of the [Law] must be interpreted and construed." *Penn Hills School District v. Unemployment Compensation Board of Review*, 437 A.2d 1213, 1215 (Pa. 1981) (quoting *Lybarger Unemployment Compensation Case*, 211 A.2d 463, 466 (Pa. 1965)); *see also Gillins v. Unemployment Compensation Board of Review*, 633 A.2d 1150, 1156 (Pa. 1993) ("[S]ection 3 of the [Law] . . . must be considered when construing all other sections of the [Law.]").

> The Pennsylvania Supreme Court explained:
>
> The objective of the [Law], as declared in [S]ection 3 [thereof], is to insure that employees who become unemployed involuntarily are provided some semblance of economic security, *id*. . . . , or, as more recently expressed "to aid those individuals who, through no fault of their own, face the grim prospect of unemployment." *Richards v. Unemployment Compensation Board of Review*, [420 A.2d 391, 395 (Pa. 1980)]; *All Steel, Inc. v. [Unemployment Compensation Board of Review*, 411 A.2d 884, 885 (Pa. Cmwlth. 1980)].
>
> Mindful of this remedial, humanitarian objective, the courts have always interpreted the benefits sections liberally and broadly to alleviate the distress of the involuntarily unemployed. Accordingly, **a cardinal principle of construction** has developed - **an unemployed worker can be denied benefits only by explicit language in the** [Law] **which clearly and plainly excludes that worker from its coverage**.

---

accumulation of financial reserves, the sharing of risks, and the payment of compensation with respect to unemployment meets the need of protection against the hazards of unemployment and indigency. The Legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this Commonwealth require the exercise of the police powers of the Commonwealth in the enactment of this [Law] for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own.

43 P.S. §752.

*Penn Hills School District*, 437 A.2d at 1215 (emphasis added; citations omitted); *see also Quigley v. Unemployment Compensation Board of Review*, 263 A.3d 574 (Pa. 2021).

Consistent with the Law's remedial, humanitarian purpose of providing income to workers unemployed through no fault of their own, there exists a presumption that an unemployed worker with the requisite work and earnings history, *see Pataki*, who registers for unemployment and is able and available for work is eligible for UC benefits,[27] unless "the claimant is specifically disqualified by some explicit section of the [Law.]" *Penn Hills School District*, 437 A.2d at 1216. "[T]he test is . . . whether the [Law] specifically excludes [her] from its provisions. This is what is meant by a liberal and broad construction." *Id*. at 1215-16 (quoting *Pittsburgh Pipe & Coupling Co. v. Unemployment Compensation Board of Review*, 165 A.2d 374, 378 (Pa. 1960)). Therefore, this Court is "guided by the general precept in construing the . . . Law, which is that 'presumably, an unemployed worker in a covered employment is entitled to benefits, and loses them only when he falls under the condemnation of a disqualifying provision of the [Law], *fairly*, *liberally*, *and broadly interpreted*.'" *Long v. Unemployment Compensation Board of Review*, 475 A.2d 190, 192 (Pa. Cmwlth. 1984) (quoting *Trexler v. Unemployment*

---

[27] Section 401 of the Law specifies that "[c]ompensation shall be payable to any employe who is or becomes unemployed, and who--" (a) has been paid wages for employment in the base year; (b) is actively searching for suitable employment; (c) has made a valid application for benefits in the proper manner; (d) is able to work and available for suitable work; (e) has been unemployed for a waiting period of one week; and (f) subsequent to separation from work under circumstances which are disqualifying under Sections 402(b) (voluntary quit), 402(e) (willful misconduct), 402(e.1), added by the Act of December 9, 2002, P.L. 1330 (failing drug test), 402(h) (self-employment) and 402(k) (to preserve pension entitlement) of the Law, has earned remuneration for services at least six times his weekly benefit rate in employment. 43 P.S. §801. "A claimant is either eligible or not[.]" *Smith v. Unemployment Compensation Board of Review*, 500 A.2d 186, 190 (Pa. Cmwlth. 1985).

18

*Compensation Board of Review*, 365 A.2d 1341, 1344 (Pa. Cmwlth. 1976) (emphasis added)).

The primary *disqualifying* provision in the Law - Section 402 - bars claimants from receiving UC benefits due to the circumstances of the initial job separation, including voluntarily quitting without a necessitous and compelling reason, *see* 43 P.S. §802(b), willful misconduct, *see* 43 P.S. §802(e), failure to submit and/or pass a drug test, *see* 43 P.S. §802(e.1), self-employment, *see* 43 P.S. §802(h), or to preserve existing pension entitlement, *see* 43 P.S. §802(k). Section 402 of the Law also disqualifies claimants from receiving UC benefits for reasons that arise after job separation, such as failure to apply for or accept suitable work, *see* 43 P.S. §802(a), (a.1), seeking unemployment benefits under another state or federal UC law, *see* 43 P.S. §802(c), or failure to participate in reemployment services, *see* 43 P.S. §802(j). Thus, Section 402 of the Law's disqualifying provisions place a heavy emphasis on a claimant's conduct.

The General Assembly also clearly intended to penalize claimants who have knowingly misused the UC system. *See* Chapter 14, Article VII of the Law, 43 P.S. §§871 (relating to claimant false statements and representations to obtain or increase compensation), 873 (relating to violation of the Law and Department rules/regulations), 874 (relating to recovery and recoupment of fault overpayments). Specifically, regarding false statements and misrepresentations, this Court has observed:

> A claimant seeking [UC] benefits is required to divulge to the [Department] all pertinent information regarding the claimant's employment status. This information is required so that the [Department] may make an intelligent and informed determination as to the claimant's eligibility for benefits and computation of a weekly benefit rate and partial benefit credit. This requirement which is imposed upon claimants **recognizes the Commonwealth's interest in [UC] and assists in fulfilling the**

19

**Commonwealth's duty to protect the [UC] fund against dissipation by those not entitled to benefits under the [L]aw**.

*Amspacher v. Unemployment Compensation Board of Review*, 479 A.2d 688, 690-91 (Pa. Cmwlth. 1984) (emphasis added); *see also Castello v. Unemployment Compensation Board of Review*, 86 A.3d 294 (Pa. Cmwlth. 2013). Thus, when interpreting the Law, "this [C]ourt remains mindful also that [it] should preserve every incentive which the Law contains to encourage full and open disclosure by a claimant." *Smith v. Unemployment Compensation Board of Review*, 500 A.2d 186, 190-91 (Pa. Cmwlth. 1985).

Relevant here, Section 801(b) of the Law declares that workers who made false representations to the Department "may be *disqualified*" from receiving regular UC benefits during "penalty weeks . . . imposed against any weeks with respect to which the claimant would otherwise be *eligible* for compensation[] under the provisions of th[e] [Law.]" 43 P.S. §871(b) (emphasis added). The Law does not define the terms *eligible* and *disqualified* which are key to interpreting the Law in this context. Having observed that "both the [s]tate and [f]ederal statutes use the words 'eligible' and 'qualified' and their antonyms interchangeably[,]"[28] this Court, in *Pataki*, interpreted them relative to SUA benefits as follows:

---

[28] The General Assembly has used the terms interchangeably. *See* Section 402.6(a) of the Law, 43 P.S. §802.6(a), added by the Act of October 30, 1996, P.L. 738 ("An employe *shall not be eligible* for payment of [UC] benefits for any weeks of unemployment during which the employe is incarcerated after a conviction." (emphasis added)), and Section 402.6(b) of the Law, 43 P.S. §802.6(b) ("The [D]epartment shall utilize any reasonable means . . . to identify and prevent the payment of benefits to incarcerated individuals *who are disqualified* under this section." (emphasis added)).

Pennsylvania courts have likewise used the terms interchangeably relative to Section 801(b) of the Law. *See Chishko v. Unemployment Compensation Board of Review*, 934 A.2d 172, 178 (Pa. Cmwlth. 2007) ("[*d*]*isqualification* is authorized under Section 801(b) [of the Law]" (emphasis added)); *see also Kunz v. Unemployment Compensation Board of Review*, 414 A.2d 433, 434 (Pa. Cmwlth. 1980) (emphasis added) (the "determination penalize[d the claimant] with **(Footnote continued on next page…)**

> [W]e will use the word "**eligible**" to describe persons whose **work and earnings entitle them to receive** [**UC**] and the word "ineligible" to describe persons whose work and earnings do not entitle them to [UC]. Workers in the field of [UC] sometimes call the concepts "financial eligibility" or "financial ineligibility."[29] We will use the word "qualified" to describe persons who, being eligible, will receive compensation because their separations from their employments were under circumstances which the Law does not declare to be disqualifying and the word "**disqualified**" to describe persons who, **although eligible**, **will not receive compensation because the circumstances** of their separations **are disqualifying under the Law**.

*Pataki*, 483 A.2d at 582 (emphasis added).[30] The process of how penalty weeks are served under the Law informs this Court's analysis of whether Claimant had to first

---

an additional nine weeks of *ineligibility* under Section 801(b) of the Law"); *Morocco v. Unemployment Compensation Board of Review*, 392 A.2d 913, 914 (Pa. Cmwlth. 1978) ("[n]o clearer expression for [the claimant's] *disqualification* by law for any benefits for the weeks in question could be fashioned" than Section 801(b) of the Law (emphasis added)).

[29] The UC Handbook defines *financial eligibility* as "[h]aving enough wages and weeks of work in your employment history to qualify for UC benefits." www.pa.gov/content/dam/copapwp-pagov/en/dli/documents/uc/ucp-forms/ucp-1.pdf at 21 (last visited January 23, 2025). Under Section 401(a) of the Law, that means the claimant must have been paid wages for employment as defined by the Law and, except as otherwise provided, not less than 37% of his total base-year wages were paid in one or more quarters, other than the highest quarter in such base year. *See* 43 P.S. §801(a).

[30] The *Pataki* Court concluded that, despite the claimant not being entitled to receive regular UC benefits because the reason for her separation from one job was disqualifying under Section 402 of the Law, since she was eligible for regular UC benefits based on the separation from a second job, she was not entitled to SUA. Although at issue in *Pataki* was the nature of the claimant's separation from work under Section 402 of the Law, rather than a penalty based on a misrepresentation to the Department under Section 801(b) of the Law, the reasoning nevertheless applies in the instant matter.

First, Section 1903(a) of the SCA specifies that undefined statutory terms "shall be construed according to rules of grammar and according to their common and approved usage[.]" 1 Pa. C.S. §1903(a). "It is well established that the common and approved meaning of a word may be ascertained from an examination of its dictionary definition." *Chamberlain v. Unemployment*
**(Footnote continued on next page…)**

21

be eligible for regular UC benefits before she could be disqualified from receiving them under Section 801(b) of the Law.

The law is well settled that a claimant assessed penalty weeks under Section 801(b) of the Law can only serve them when he/she makes a *future* UC

---

*Compensation Board of Review*, 114 A.3d 385, 394 (Pa. 2015). The common definition of the term *eligible* is "qualified to participate[.]" https://www.merriam-webster.com/dictionary/eligible (last visited January 23, 2025). The common definition of the term to *disqualify* is "to deprive of a . . . right[] or privilege[.]" https://www.merriam-webster.com/dictionary/disqualified (last visited January 23, 2025). To *deprive* commonly means "to take something away from" or "to withhold something from[.]" https://www.merriam-webster.com/dictionary/deprive (last visited January 23, 2025). The *Pataki* Court's definitions are consistent with the common and approved meanings of those terms.

Second, entitlement to SUA, like PUA, was limited to claimants who were *not eligible* for regular UC benefits. Section 201 of SUA declared: "It is the purpose of this title to establish a temporary [f]ederal program of [SUA] for workers who are unemployed during a period of aggravated unemployment and [w]ho are not otherwise eligible for unemployment allowances under any other law." 26 U.S.C. §3304 note. This Court interpreted:

> [E]mphases on financial eligibility for [s]tate employment compensation as a bar to the receipt of [f]ederal assistance impels us to conclude that **Congress intended to assist only those persons who were entirely without coverage of the** [s]**tate law**; **that its purposes were to fill the eligibility gaps in other programs and not that of supplementing** [s]**tate laws by providing** [f]**ederal assistance to those who**, **eligible for** [s]**tate compensation**, **were disqualified from receiving it** by the nature of their separation from work.

*Pataki*, 483 A.2d at 584 (emphasis added); *see also Latimer v. Unemployment Compensation Board of Review*, 367 A.2d 342, 347 (Pa. Cmwlth. 1976) ("[A] claimant must be totally ineligible for any state benefits for a period of unemployment in order that SUA benefits may be collected for that same period."); *Foreman v. Security Insurance Company of Hartford*, 15 S.W.3d 214, 217 (Tex. App. 2000) (Based on *Pataki*, "eligibility is determined solely by whether the individual meets the applicable criteria for receipt of benefits, not by whether the benefits are actually received.").

claim.[31] *See Ruffner v. Unemployment Compensation Board of Review*, 172 A.3d 91 (Pa. Cmwlth. 2017); *see also Chishko v. Unemployment Compensation Board of Review*, 934 A.2d 172 (Pa. Cmwlth. 2007); *Smith*; Pennsylvania's UC Handbook at 13 (notifies claimants that penalties for fraud can include "[d]isqualification from receiving future benefits for up to the number of weeks that fraud was committed").[32] Therefore, a claimant can only serve penalty weeks if and when he/she is again eligible (i.e., work and earnings entitle her to receive UC and she is able and available for work), files an application, is approved for regular UC benefits, and, thereafter, files weekly claim certifications in the Department's UC system.[33]

---

[31] When eligible for future UC benefits (i.e., initially satisfies work and earnings requirements), a worker must file a claim with the Department. *See* Section 401(c) of the Law, 43 P.S. § 801(c).

[32] *See* www.pa.gov/content/dam/copapwp-pagov/en/dli/documents/uc/ucp-forms/ucp-1.pdf at 13 (last visited January 23, 2025).

> The UC Handbook was not admitted into evidence at the hearing. . . . Notwithstanding, this Court has taken judicial notice of the UC Handbook. *See Hollingsworth v. Unemployment Comp*[*ensation*] *B*[*oard*] *of Rev*[*iew*], 189 A.3d 1109 (Pa. Cmwlth. 2018); *see also Ciccolini v. Unemployment Comp*[*ensation*] *B*[*oard*] *of Rev*[*iew*] (Pa. Cmwlth., No. 1796 C.D. 2016, filed August 3, 2017).

*Naborn v. Unemployment Compensation Board of Review*, 246 A.3d 373, 376 n.7 (Pa. Cmwlth. 2021).

[33] "[A] determination of eligibility gives rise to only a conditional entitlement to weekly benefits, subject to cessation if a claimant subsequently becomes reemployed. The entitlement is also subject to other subsequent determinations by the compensation authorities which alter a claimant's eligibility status." *Daniels v. Unemployment Compensation Board of Review*, 465 A.2d 726, 728 (Pa. Cmwlth. 1983). The UC Handbook explains:

> To continue receiving benefit payments, you will need to file a weekly claim certification for each week you are totally or partially unemployed. This tells Pennsylvania UC staff that you are still jobless and are seeking payment for that week. Opening an

**(Footnote continued on next page…)**

Because, during penalty weeks, the Department withholds regular UC benefits to which a claimant is otherwise entitled,[34] if a claimant is not first eligible for regular UC benefits, there would be no UC benefits from which the claimant could be disqualified. Here, in 2020, after Claimant became eligible again and applied for regular UC benefits, she served her 15 penalty weeks from June 20 to October 10, 2020, during which time the Department withheld the regular UC benefits to which she was otherwise entitled. *See* N.T. at 6, 8, 12. After serving her 15 penalty weeks, the Department paid Claimant her remaining regular UC benefits. *See* N.T. at 8, 12. Under such circumstances, Claimant was clearly eligible for regular UC benefits and remained eligible for them during her penalty weeks.

Claimant's public policy argument that a person serving penalty weeks is nevertheless eligible for PUA because he/she is ineligible for regular UC benefits during those weeks would lead to an absurd result - a dishonest claimant would never be accountable for the consequences of his/her misconduct as Section 801(b) of the Law prescribes, and such interpretation is not mindful of the goal to "preserve every

---

unemployment claim does not result in any payments; weekly claims must be filed for you to receive payment.

www.pa.gov/content/dam/copapwp-pagov/en/dli/documents/uc/ucp-forms/ucp-1.pdf at 8 (last visited January 23, 2025).

Similarly, Section 2102(c) of the CARES Act provides: "As a condition of continued eligibility for [PUA], a covered individual shall submit a recertification to the [s]tate for each week after the individual's [first] week of eligibility that certifies that the individual remains an individual described in subsection (a)(3)(A)(ii) for such week." 15 U.S.C. §9021(c)(6).

[34] As stated previously herein, the Department has instructed claimants on its website: "In order to serve a penalty week, the claimant must file a claim for the week and be eligible for partial or full benefits." https://www.uc.pa.gov/unemployment-benefits/overpayment-of-benefits/pages/default.aspx#:~:text=Penalty%20weeks%20are%20served%20during%20any%20week%20for,and%20be%20eligible%20for%20partial%20or%20full%20benefits (emphasis omitted) (last visited January 23, 2025). "While serving a penalty week, no monies are paid to the claimant. Penalty weeks are served during any week for which the claimant would otherwise be eligible for compensation . . . ." *Id.*

incentive . . . to encourage full and open disclosure by a claimant." *Smith*, 500 A.2d at 190-91. The extensive Congressional Record surrounding the CARES Act's passage Claimant cited reflects Congress's intention to provide relief to workers unemployed due to the COVID-19 pandemic. However, this Court's reading of the Congressional Record does not discern any intention by Congress to benefit persons who previously obtained regular UC benefits under false pretenses.

Because Claimant was eligible for and had not yet exhausted all rights to regular UC benefits while she served her penalty weeks (i.e., while her regular UC benefits claim was pending), she did not qualify for PUA. Interpreting Section 801(b) of the Law's penalty week disqualifying provision "*fairly*, *liberally*, *and broadly*" as we must, *Long*, 475 A.2d at 192 (quoting *Trexler*, 365 A.2d at 1344 (emphasis added)), this Court holds that treatment of penalty weeks under Pennsylvania law is such that Claimant remained *eligible* for regular UC benefits while she served penalty weeks - which was the scenario presented in Answer A. Accordingly, the UCBR properly concluded that Claimant was *not* a *covered individual* entitled to PUA under the CARES Act while she served her penalty weeks.

Based on the foregoing, the UCBR's order is affirmed.


---

MICHAEL H. WOJCIK, Judge

25

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Charlize Cunningham,      :
     Petitioner    :
              :
   v.         :
              :
Unemployment Compensation  :
Board of Review,      :  No. 377 C.D. 2023
     Respondent   :

# **O R D E R**

AND NOW, this 24th day of January, 2025, the Unemployment Compensation Board of Review's February 3, 2023 order is AFFIRMED.

           _____
           MICHAEL H. WOJCIK, Judge